## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## NORTHERN DIVISION

WILLIAM E. PUTMAN, II,

        *Plaintiff,*

*v.*

TUSCOLA, COUNTY OF,
CORRECTIONAL HEALTHCARE
COMPANIES, LLC, JOSEPH
NATOLE, M.D., JANE DOE, JOHN
DOES 1-5, GLEN SKRENT,
ROBERT BAXTER, BRIAN
HARRIS, KYLE NORDSTROM, and
RYKER MAURER,

        *Defendants.*

_____/

Case No. 1:23-CV-10427

Thomas L. Ludington
United States District Judge

Patricia T. Morris
United States Magistrate Judge

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON DEFENDANTS CORRECTIONAL HEALTHCARE COMPANIES, LLC, JOSEPH NATOLE, M.D., AND JANE DOE, L.P.N.'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR FAILURE TO STATE A CLAIM UNDER FED. R. CIV. P. 12(b)(6) (ECF No. 16) AND RENEWED MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR FAILURE TO STATE A CLAIM UNDER FED. R. CIV. P. 12(b)(6) (ECF No. 21)

## I.  RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that Defendants'

Renewed Motion to Dismiss Plaintiff's Complaint for Failure to State a Claim Under

Fed. R. Civ. 12(B)(6) (ECF No. 21) be **GRANTED IN PART**, and Defendants'

Motion to Dismiss Plaintiff's Complaint for Failure to State a Claim Under Fed. R.

Civ. P. 12(B)(6) (ECF No. 16) be **DENIED AS MOOT**. It is further recommended that the Court *sua sponte* **dismiss John Does 1 to 5**.

If the Report and Recommendation is adopted, John Does 1 to 5 would be dismissed from this action. In addition, Plaintiff's Eighth Amendment deliberate indifference claims would be dismissed as to Defendants CHC, Natole and Jane Doe, LPN (aka Nurse Doe), and Plaintiff's ADA and RA claims would be dismissed against Defendant Natole and Jane Done, LPN.

In addition, if the Report is adopted the following claims would remain: (1) Plaintiff's Eighth Amendment deliberate indifference claims (Counts 1 and 2) against Tuscola County, Skrent, Baxter, Harris, Nordstrom, and Maurer; (2) Plaintiff's medical malpractice claim against CHC, and Natole; (3) Plaintiff's violation of the ADA and RA claim against Defendants Tuscola County, and Nordstrom; and (4)Plaintiff's First Amendment retaliation claim against Defendants Tuscola County, Skrent, Baxter, Harris, Maurer and Nordstrom.

## II. <u>REPORT</u>

### A. Introduction

Plaintiff William Putman II brought this action alleging violations of his constitutional rights under 42 U.S.C. § 1983, the Americans with Disabilities Act ("ADA"), and the Rehabilitation Act ("RA"), and a state medical malpractice claim associated with the improper medical treatment he received while being housed at

the Tuscola County Jail ("TCJ").  (ECF No. 19).  Specifically, Plaintiff alleges that the medical staff at TCJ withheld his prescription heart medications which led to an acute cardiac arrythmia resulting in obstruction of his coronary arteries.  (*Id.* at PageID.31).

### B.  Factual Background

Prior to Plaintiff's arrival at TCJ to serve his 30-day sentence in jail[1], his criminal defense attorney advised Defendants, the Tuscola County Prosecutor, and the trial court that Plaintiff suffered from several serious cardiovascular conditions which called for the consistent administration of his prescription heart medication, including metoprolol, clopidogrel, and atorvastatin.  (ECF No. 19, PageID.131–32, 139 ¶¶ 2, 27).   Following his conviction, Plaintiff submitted a Presentence Investigation Report where he explained that he had a history of congestive heart failure which he treated with very specific medication.  (*Id.* at PageID.138–39 ¶¶ 24–25).   His Sentencing Memorandum and treating physician's letter also emphasized his serious medical condition.  (*Id.* at PageID.139 ¶ 26).

Plaintiff informed the jail personnel of his serious condition and medical regimen during his intake at TCJ.  (*Id.* at PageID.132 ¶ 3).  His sons, William Putman III and Blake Putman, M.D., also advised Defendants of the same and, after

---

[1] Plaintiff was sentenced to twelve months of probation, the first 30 days of which were to be served in TCJ.

receiving permission from Defendant Kyle Nordstrom, a corrections officer, they delivered his medication, metoprolol, along with written orders and instructions. (*Id.* at PageID.132, 140 ¶¶ 28, 29, 30).

Following his intake, Plaintiff was transferred to an observation cell. (*Id.* at PageID.140 ¶ 32). On the evening of October 4, 2022, Plaintiff informed his children by phone that Defendants did not distribute his medication despite his repeated requests. (*Id.* at PageID.140 ¶ 33). The next morning, Dr. Putman contacted Defendant Joseph Natole's, TCJ's Site Medical Director and sole physician, office but Defendant Natole "did not take Dr. Putman's call." (*Id.* at PageID.141 ¶ 34). Dr. Putman then drove back to TCJ that evening and advised Defendant Jane Doe of the seriousness of Plaintiff's condition and importance of him receiving his medication uninterrupted. (*Id.* at PageID.141 ¶ 35). Later that evening, Plaintiff was administered an unknown medication contrary to Dr. Putman's prescription and written instructions. (*Id.* at PageID.141 ¶ 36). Plaintiff spoke to his sons again later on that night and appeared disorientated, stated he was thirsty, and had not received his medication. (*Id.* at PageID.142 ¶ 39). After, Plaintiff "complained to Defendants that he was having chest pain, difficulty breathing, nausea, vomiting and swelling in his extremities" but his complaints went unanswered. (*Id.* at PageID.142 ¶ 40). The next day, Plaintiff's cellmate demanded assistance for Plaintiff and he was taken to the hospital where testing revealed that

he was "suffering from atrial fibrillation with rapid ventricular rates." (*Id.* at PageID.143 ¶ 42). The doctors recommended Plaintiff receive a transesophageal echocardiogram and cardioversion. (*Id.* at PageID.143 ¶ 43). Plaintiff underwent several surgeries, and spent an extended period of time recovering in the hospital. (*Id.* at ¶ 44).

Plaintiff commenced this action on February 17, 2023 and filed an amended complaint on May 30, 2023. (ECF Nos. 1 and 19). The amended complaint alleges the following claims against the following Defendants: (1) Eighth Amendment deliberate indifference to serious medical needs claim under Section 1983 against all individual defendants; (2) Eighth Amendment deliberate indifference to serious medical needs claim under Section 1983 against Tuscola County, Skrent, CHC and Natole; (3) medical malpractice claim against CHC, Natole and Nurse Doe; (4) violation of the Americans with Disabilities Act (ADA) and Rehabilitation Act (RA) against Tuscola County, Nordstrom, Natole and Nurse Doe; and (5) First Amendment retaliation claim under Section 1983 against Tuscola County, Skrent, Baxter, Harris, Maurer, and Nordstrom. (ECF No. 19.)

Defendants Correctional Healthcare Companies, LLC, Joseph Natole, M.D., and Jane Doe, L.P.N. ("CHC Defendants") filed a motion to dismiss on May 9, 2023 (ECF No. 16), and renewed their motion on June 13, 2023 (ECF No. 21). The motion is fully briefed.

### C.  Standard of Review

Under Rule 12(b)(6), a complaint must provide "a short and plain statement of the claim that the pleader is entitled to relief."  *See* Fed. R. Civ. P. 8(a)(2). Accordingly, a plaintiff's complaint shall be dismissed for failure to state a claim if it lacks sufficient "factual matter (taken as true) to" provide "plausible grounds to infer" that the elements of a claim for relief could be met.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007); *see* Fed. R. Civ. P. 12(b)(6).  A complaint must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  Mere labels, conclusory statements, or "formulaic recitations" of the elements of a cause of action are not sufficient to meet this burden if they are unsupported by adequate factual allegations.  *Id.* (citing *Papasan v. Allain*, 478 U.S. 265. 286 (1986)).  The requirement to provide a claim does not require that a claim be "probable"; however, a claim must be more than merely "conceivable." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–80 (2009).

### D.  Analysis

#### 1.  CHC Defendants' May 9 Motion to Dismiss is Moot as the May 30 Amended Complaint is the Operative Complaint

Defendants' May 9, 2023 motion to dismiss is moot as Plaintiff filed an amended complaint on May 30, pursuant to Fed. R. Civ. P. 15(a)(1), as a matter of course.[2]

A short outline of the briefing timeline is warranted to fully explain the undersigned's finding on this issue. On February 17, 2023, Putman filed his initial complaint. (ECF No. 1). Instead of filing an answer to Putman's initial complaint, Defendants opted to file a motion to dismiss Plaintiff's complaint for failure to state a claim. (ECF No. 16). Twenty-one days later, Putman filed his amended complaint. (ECF No. 19). Defendants then filed a renewed motion to dismiss Plaintiff's complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). (ECF No. 21). Putman filed his response to Defendants' dispositive motion (ECF No. 25), Defendants filed their reply (ECF No. 26), and briefing was completed on July 19, 2023.

Rule 15(a)(1) provides that a party may amend their complaint as a matter of course within:

> (A) 21 days after serving it, or
>
> (B) If the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.

---

[2] Plaintiff raises this point in his response. (ECF No. 25, PageID.250 n.1).

Fed. R. Civ. P. 15(a); *Berry v. Specialized Loan Servicing, LLC*, No. 2:18-cv-02721, 2020 WL 3485577, at *4 (W.D. Tenn. Feb. 24, 2020).  Under this Rule, generally, a party may amend its pleading once as a matter of course, but in all other cases it may amend a pleading only by consent of the opposing party or with leave of the court. *Commerce Benefits Grp., Inc. v. McKesson Corp.*, 326 Fed. App'x 369, 376 (6th Cir. 2009).  Here, because the deadline by which Putman could file an amended complaint as a matter of course pursuant to Rule 15(a)(1)(B), following Defendants' motion to dismiss, had not yet expired, Putman's Amended Complaint became the operative complaint upon its filing.

Further, an amended complaint, when filed as a matter of course, generally supersedes the original complaint, thus rendering a dispositive motion to an original complaint moot.  *Glass v. Kellogg Co.*, 252 F.R.D. 367, 368 (W.D. Mich. 2008) ("Because the original complaint has been superseded and nullified, there is no longer a live dispute about the propriety or merit of the claims asserted therein; therefore, any motion to dismiss such claims is moot." (footnote omitted)); *Goldstein v. Ryan*, No. JKB-18-1337, 2018 WL 11467972, at *1 (D. Md. Dec. 28, 2018) ("Here, Plaintiff's amended pleading superseded the original pleading, such that any motions directed at the superseded pleading are to be denied as moot."); *Perez v. U.S. Bureau of Prisons*, No. 02 CV 5063, 2006 WL 8441655, at *3 (E.D.N.Y. Apr. 17, 2006) (Defendant's summary judgment motion directed at plaintiff's original

complaint was rendered moot in "consideration of the fact that the amended complaint superceded the original pleading. . . .").

For these reasons, the Court need not address the merits of CHC Defendants' May 9 motion to dismiss (ECF No. 16) and the undersigned **RECOMMENDS** it be **DENIED** as **MOOT**.

### 2. Defendant CHC, Natole, and Jane Doe Defendants' Renewed Motion to Dismiss (ECF No. 21)

#### i. Eighth Amendment Violation: Deliberate Indifference (Individual Capacity)

##### a. Dr. Natole

CHC Defendants argue that Plaintiff's amended complaint still fails to allege sufficient "factual allegations from which to infer Dr. Natole was subjectively aware of the risk to Plaintiff's health and that he consciously disregarded that risk. (ECF No. 21, PageID.227). He counters the complaint adequately pleads that Dr. Natole was aware of his serious cardiac condition, had knowledge of his treatment plan, but "knowingly interfered" and failed to adhere to his treatment plan, and subsequently provided "grossly inadequate" medical care. (ECF No. 25, PageID.256–57).

Plaintiff alleges Dr. Natole violated his Eighth Amendment right in both his individual and official capacity. (ECF No. 19, PageID.144). Under the Eighth Amendment, prisoners have a constitutional right to medical care. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). And prison officials may not act with deliberate

indifference to the medical needs of their prisoners. *Id.* at 104. A deliberate indifference claim has two components, one objective and the other subjective. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001). Under the objective component[3], the plaintiff must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective component, "the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Id.*

The subjective element of a deliberate indifference claim requires a plaintiff to demonstrate that the defendant "subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Comstock*, 273 F.3d at 703 (citing *Farmer*, 511 U.S. at 834). Indeed, the plaintiff must establish that "prison officials have a sufficiently culpable state of mind in denying medical care." *Jones v. Muskegon Cnty.*, 625 F.3d 935, 941 (6th Cir. 2010). A culpable state of mind requires obduracy and wantonness, not mere inadvertence. *Gibson v. Foltz*, 923 F.2d 851, 853 (6th Cir. 1992). A plaintiff need not show that an official acted with the purpose or knowledge of causing harm;

---

[3] The parties do not challenge the objective element of the deliberate indifference claim, so the discussion in this recommendation will focus on the subjective element.

perceiving and disregarding a substantial risk will suffice. *Comstock*, 273 F.3d at 703 (quoting *Farmer*, 511 U.S. at 835) (holding that official must know of and disregard an excessive risk to inmate health or safety)). In essence, deliberate indifference can be established by a plaintiff demonstrating that medical care was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miller v. Calhoun Cnty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 843 (6th Cir. 2001)).

To satisfy the subjective component of the deliberate indifference test Plaintiff must allege facts which, if true, would show that Defendant Natole subjectively perceived facts from which to infer that a substantial risk as to Plaintiff existed, that Defendant Natole did in fact draw this inference, and that he then disregarded the risk. *Comstock*, 273 F.3d at 703. While Plaintiff's complaint contains a number of allegations regarding "Defendants" as a whole and their knowledge of his cardiac condition[4], it only contains two factual statements alleged directly against Defendant Natole:

---

[4] A few examples of such allegations are as follows:

"Before Mr. Putman reported to TCJ, Defendants were made aware that Mr. Putman suffered from several serious cardiovascular conditions which required uninterrupted use of his prescription heart medications, which include metoprolol, clopidogrel, and atorvastatin. Mr. Putman's state district court case records show that his criminal defense attorneys conveyed this not only to the Defendants, but also the Tuscola County Prosecutor,

On the morning of October 5, 2023, Dr. Putman called the office of TCJ's Site Medical Director and sole physician, Defendant Natole. Yet, Natole did not take Dr. Putman's call. Still Dr. Putman left Natole an urgent message about their mutual patient's serious cardiac condition and its management with daily metoprolol. Unsurprisingly, neither Natole nor anyone from his office ever returned Dr. Putman's phone call. (ECF No. 19, PageID.141 ¶ 34).

By that time, Mr. Putman had gone nearly two days without any of his prescription heart medications. And when Mr. Putman eventually received medication sometime during the night of October 5, 2022, it turned out that Natole and Nurse Doe only dispensed a single dosage of an unknown medication contrary to Dr. Putman's prescription and written instructions. (*Id.* at ¶ 36).

Allegations lodged against a group of defendants as a whole cannot be used to find an individual defendant liable for a deliberate indifference claim. *Barren v.*

---

and the trial court. Mr. Putman's precarious condition and his specific serious medical needs were confirmed in a letter from Dr. Frank Pelosi, Jr. M.D., a cardiac electrophysiologist, and Associate Professor of Medicine at the University of Michigan, that has been treating Mr. Putman since 2005." (ECF No. 19, PageID.131–32 ¶ 2).

"During his intake at TCJ, Mr. Putman himself informed Defendants of his serious cardiovascular conditions and daily prescriptions. So did Mr. Putman's sons, William Putman III and Blake Putman, M.D., who also serves as Mr. Putman's primary care physician. Specifically, [William] and Dr. Putman personally delivered their father's medication which included Dr. Putman's written orders and instructions." (*Id.* at PageID.132 ¶ 3).

"Dr. Putman confirmed that Defendants knew of Mr. Putman's medical and prescription needs by personally communicating with each of them and by providing Nurse Doe with Mr. Putman's prescription in accordance with MCL 800.282." (*Id.* at PageID.142 ¶ 38).

*Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998) (To state a claim under § 1983, a "plaintiff must allege facts, not simply conclusions, that show than an individual was personally involved in the deprivation of his civil rights.  Liability under § 1983 must be based on the personal involvement of the defendant."); *see Dunbar v. Caruso*, No. 1:11-CV-10123-DT, 2011 WL 3474004 at *4 (E.D. Mich. July 12, 2011) (citation omitted).  Thus, Plaintiff must include factual allegations that Defendant Natole was aware of his condition, knew that failing to provide his medication may result in Plaintiff experiencing a health emergency, and disregarded said risk.  The only factual allegations contained in the complaint show that Plaintiff's son left a voicemail for Defendant Natole and that he dispensed a single dose of an unknown medication the next day.  Nothing more.  This is insufficient to impose liability under § 1983.

Instead of including direct factual allegations regarding Defendant Natole's knowledge of his medical condition, Plaintiff's attempts to impugn knowledge upon him by stating that Defendants as a whole were aware of his condition.  (ECF No. 19, PageID.142 ¶ 38).  Aside from this conclusory statement, the complaint does not contain allegations that Plaintiff or either of his sons directly spoke to Defendant Natole, provided him with his medical records, or the prescription.  Alleging that Defendant Nordstrom received direct notice of Plaintiff's medical condition and treatment plan does not remedy this infirmity.  *Hart v. Heyns*, No. 12-14281, 2013

WL 2395181 at *2 (E.D. Mich. May 31, 2013).  In fact, the complaint demonstrates that it is quite possible Defendant Natole did not receive notice as Plaintiff alleges "[d]iscovery will reveal that the County Defendants transferred [him] to an observation cell without referring him for further medical assessment. . . ."  (ECF No. 19, PageID.140 ¶ 32).  The complaint leaves the question as to at what point, if any, Defendant Natole received notice of Plaintiff's condition unanswered.  Further, the complaint does not contain factual allegations that Defendant Natole approved or authorized a change in Plaintiff's treatment course or any other allegations along those lines.  The only allegation as to the type of treatment provided by Defendant Natole is that he, and Defendant Jane Doe, provided Plaintiff with an "unknown medication contrary to Dr. Putman's prescription and written instructions."  (ECF No. 19, PageID.141 ¶ 36).

While there is no doubt that the medical episode Plaintiff experienced while at TCJ was frightening and upsetting, Plaintiff's complaint simply fails to adequately allege the personal involvement or subjective awareness of Defendant Natole.  Thus, there are too few factual allegations to state a deliberate indifference claim as to Defendant Natole.  *Fleming v. Wayne Cty. Jail*, Case No. 2:19-cv-12297, 2023 WL 5807052, at *8 (E.D. Mich. May 19, 2023).

### b. Defendant Jane Doe, L.P.N.

Plaintiff's claims against Defendant Jane Doe, L.P.N. as to deliberate indifference suffer from the same infirmity as Defendant Natole's. The complaint contains too few factual allegations to state a deliberate indifference claim against her. In sum, Plaintiff alleges the following:

> Cognizant of the serious risk of harm his father faced by going more than a day and half without prescription heart medication, Dr. Putman drove back to TCJ at around 6:00 PM that same day. While there, Dr. Putman pleaded with CHC's employee, Nurse Doe. For the second time that day, Dr. Putman once again explained to a CHC healthcare provider that his father suffered from several serious cardiac conditions and without uninterrupted use of his prescription metoprolol and other medications, it was obvious that his father risked death. (ECF No. 19, PageID.141 at ¶ 35).
>
> By that time, Mr. Putman had gone nearly two days without any of his prescription heart medications. And when Mr. Putman eventually received medication sometime during the night of October 5, 2022, it turned out that Natole and Nurse Doe only dispensed a single dosage of an unknown medication contrary to Dr. Putman's prescription and written instructions. (*Id.* at ¶ 36).

While the allegations demonstrate that Defendant Jane Doe was aware of Plaintiff's condition, they do not show that she disregarded the risk Plaintiff faced. The complaint allegations demonstrate Defendant Jane Doe received notice of the condition on October 5 and later, that same day, administered medication other than Plaintiff's prescriptions to him. (*Id.*).

Taking Plaintiff's allegations as true, the undersigned finds that he has not raised enough factual allegations regarding the subjective component of deliberate indifference to support this claim as to Defendant Jane Doe.  Plaintiff alleges that his son provided Defendant Jane Doe with notice of his condition and the importance of him receiving his prescribed heart medication immediately.  (ECF No. 19, PageID.141 ¶ 35).  But instead of receiving his prescription, Plaintiff received an unknown medication.  (ECF No. 19, PageID.141 ¶ 36).  In sum, Defendant Jane Doe elected to give Plaintiff another medication.  The complaint does not allege that she disregarded Dr. Putman's notice regarding Plaintiff's condition and elected to do nothing, it alleges that she decided to provide an alternative medication.  *See Flentall v. Lange*, No. 1:10-CV-161, 2011 WL 4526741, at *2 (W.D. Mich. Sept. 28, 2011) (Plaintiff's complaint stated that the doctor ultimately decided to replace plaintiff's methadone prescription with another treatment, which "evidence nothing more than a difference of medical opinion" regarding his treatment decision).  The undersigned finds that this claim is not enough to allege deliberate indifference.  *Button v. Parsons*, No. 9:11-CV-472, 2012 WL 426569, at * 3 (N.D.N.Y. Jan. 17, 2012) (Plaintiff's allegations that the "defendants prescribed generic forms of his medication, caused him to miss outpatient appointments, and misdiagnosed him" were insufficient to "rise to the level of a constitutional violation" even though plaintiff suffered another heart attack); *Thompson v. Hendrick*, No. 1:17-CV-00982,

2019 WL 3059808, at **2, 8 (W.D. La. May 24, 2019) (granting defendant officer's motion to dismiss and finding that although defendant was advised by plaintiff that he had a heart condition for which he took prescription medication, plaintiff's allegations of defendant officer's decision to respond that plaintiff needed a nebulizer , and nothing more, did not amount to deliberate indifference).  Thus, the undersigned finds that Plaintiff's complaint fails to plead a cognizable deliberate indifference cause of action as to Defendant Jane Doe.

### ii.  Eighth Amendment Violation: Deliberate Indifference (Dr. Natole and CHC in their Official Capacity)

Plaintiff's allegations as to CHC and Dr. Natole in his official capacity include: (i) Dr. Natole's actions, or inaction, may "constitute a policy to satisfy *Monell* because [ ] [Plaintiff] alleges that Dr. Natole is 'an official who possesses final authority to establish municipal policy with respect to the action ordered . . . which means that his decisions are final and unreviewable and are constrained by the official policies of superior officials"; (ii) CHC's "training and supervision of Nurse Doe and Natole were inadequate; that this inadequacy resulted from CHC's deliberate indifference, and that CHC's inadequate training caused Mr. Putman's injuries"; and (iii) CHC had a custom of tolerating Dr. Natole's absenteeism from TCJ despite the requirement that he provide "one-hour of onsite physician services per week" pursuant to CHC's Agreement for Healthcare Services.  (ECF NO. 25, PageID.259–60, 263, 264).

Defendants CHC and Natole argue that (1) Plaintiff's amended complaint fails to sufficiently plead allegations to raise Monell as they did not identify with specificity the policy practice or custom that Dr. Natole allegedly put in place and (2) "[t]o the extent Plaintiff attempts to show an alleged unconstitutional policy through reference to the assessment by the National Sheriff's Association ('NSA'), Plaintiff's amended complaint makes clear the Tuscola County Jail engaged the NSA and that the NSA's recommendations were directed to Tuscola County Jail, not Defendant CHC."  (ECF No. 21, PageID.230; ECF No. 26, PageID.273–74).

"In the context of medical services, the Sixth Circuit has stated that 'it is clear that a private entity which contracts with the state to perform a traditional state function such as providing medical services to prison inmates may be sued under § 1983 as one acting under color of state law."  *Dykes v. Marshall*, No. 14-cv-1167, 2016 WL 1059618, at *3 (W.D. Mich. Mar. 17, 2016).

Next, it is well-established that an individual sued in their official capacity cannot be held liable under § 1983 under the theory of *respondeat superior* or vicarious liability.  *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).  Instead, to state a claim of deliberate indifference against such a defendant in their official capacity, a plaintiff must plead a claim of a specific policy, practice, or custom that directly caused them to suffer a deprivation of their federal rights.  *Starcher v. Corr. Med. Sys., Inc.*, 7 F. App'x 459, 465 (6th Cir. 2001) (quoting *Board*

*of Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 415 (1997)); *Jane v. Patterson*, No. 1:16 CV 2195, 2017 WL 1345242, at *6 (N.D. Ohio Apr. 12, 2017) ("For Plaintiff to present a viable *Monell* claim, he must identify a specific policy or custom that was the moving force behind Plaintiff's alleged constitutional violation.") (emphasis added, citations omitted).   "An allegation, stated in a conclusory manner, that a governmental entity had a policy which caused an injury is insufficient where a specific policy or custom is not identified."  *Jane*, 2017 WL 1345242 at * 6 (finding that a "conclusory allegation that the City had a policy of deliberate indifference to the criminal conduct by its agents is insufficient to state a *Monell* claim").

Plaintiff's complaint contains only conclusory allegations of an unconstitutional policy, practice, or custom.  (*See, e.g.,* ECF No. 19, PageID.147 ¶ 66 ("Tuscola County, Skrent, CHC, and Natole acted with deliberate indifference and had unconstitutional policies, customs, and practices regarding the treatment of individuals with disabilities and chronic conditions and the provision of constitutionally adequate medical care, which was the moving and proximate cause of Mr. Putman's needless suffering and injuries."); *Id.* at PageID.152 ¶ 87 ("Natole, CHC, and Tuscola County further acted with deliberate indifference and had unconstitutional policies, customs, and practices in that Natole, as Site Medical Director, possessed final decision-making authority and that he ratified

unconstitutional conduct."); *Id.* at PageID.153 ¶ 90 ("Discovery will also show that Natole assisted with and approved of Nurse Doe's decision to interfere with Mr. Putman's previously prescribed treatment plan and that he ratified TCJ and CHC's policy and custom of not providing in-person physician services.")). Thus, in the absence of allegations connecting the alleged inadequate medical treatment Plaintiff received to a specific policy, practice or custom of either Dr. Natole or CHC, Plaintiff's § 1983 claims lodged against Defendants CHC and Natole, in their official capacity, should be dismissed. *Pearson v. Michigan Dep't of Corr.,* No. 19-10707, 2020 WL 5291974, at \*2 (E.D. Mich. Sept. 4, 2020) (dismissing Plaintiff's § 1983 claim against the Corizon Defendants "[i]n the absence of allegations connecting the denial of medical care to Plaintiffs to a specific policy, practice or custom"); *Morris v. Newberry Corr'l Facility*, No. 11-10938, 2013 WL 1223646, at \*3 (E.D. Mich. Feb. 11, 2013); *Jackson v. Williams*, No. 10-cv-14985, 2012 WL 760796, at \*4 (E.D. Mich. Mar. 8, 2012)

### iii.  Michigan Sate Medical Malpractice Claims

The CHC Defendants argue that Plaintiff failed to adhere to Michigan state laws prior to filing their complaint by not complying with MCL 600.2912b and 2912d. (ECF No. 21, PageID.231). And thus failed to state a valid cause of action for medical malpractice under MCL 600.2912 *et seq*. (*Id.* at PageID.232, 235). Plaintiff counters that this argument fails as the Sixth Circuit has ruled that Michigan

State's "affidavit of merit and presuit-notice requirements do not apply in federal courts as they were displaced by Fed. R. Civ. P. Rules 3, 8(a), 9, 11, and 12(b)(6) of the Federal Rules of Civil Procedure." (ECF No. 25, PageID.266). And as such, CHC Defendants' argument is not a basis for dismissal.

A medical malpractice claim in Michigan is "subject to the procedural and substantive requirements that govern" such actions. *Bryant v. Oakpointe Villa Nursing Centre, Inc.*, 471 Mich. 411, 422 (2004). One such requirement is that a medical malpractice lawsuit shall not be commenced unless the healthcare provider is first served with a notice of intent to file a claim at least 182 days before the action is commenced. MCL § 600.2912b (2004). "[I]t is plaintiff's burden to establish compliance with § 2912b[.]" *Roberts v. Atkins*, 470 Mich. 679, 691 (2004). Another requirement is that a plaintiff who brings a medical malpractice claim must include an affidavit of merit, signed by a health professional attesting to the defendant's failure to meet the standard of patient care, with the complaint. MCL § 600.2912d (1994).

As discussed in *Albright v. Christensen*, 24 F.4th 1039, 1049 (2022), Michigan's affidavit of merit and pre suit notice requirements do not apply in federal court actions. One caveat applies which Defendants wish to exploit. *Albright's* ruling specifically held that the "affidavit-or-merit and presuit-notice requirements do not apply in diversity actions[.]" (*Id.*) Thus, it is important we address whether the

holding would be the same in the instant action, which involves a case brought before the court under the federal question jurisdiction. *Wilson v. Blue* is instructive on this issue.   No. 1:22-cv-359, 2022 WL 3224456, at *6  (W.D. Mich. Aug. 10, 2022). *Wilson* involved a plaintiff who commenced a civil rights action under 42 U.S.C. § 1983 alleging constitutional violations and state medical malpractice claim.   The Court held that although the *Albright* decision applied to a case which depended on diversity of citizenship, the same holding applied to the court even when it was exercising supplemental jurisdiction over state law claims.   *Id.* ("A federal court exercising supplemental jurisdiction over state law claims is bound to apply the law of the forum state to the same extent as if it were exercising its diversity jurisdiction." (quoting *Super Sulky, Inc. v. Trotting Ass'n*, 174 F.3d 733,  741 (6th Cir. 1999))). The Court ruled that "Plaintiff's state law tort claims [could not] be dismissed for failure to comply with the 'affidavit of merit' requirement." *Id.*; *Brown v. Haiderer*, No. 4:21-cv-11565, 2023  WL 4499567, at *7 n.6 (E.D. Mich. Mar. 15, 2023); *Streeter v. Macomb County*, 2023 WL 1784745, at *7 (E.D. Mich. Feb. 6, 2023); *Santini v. Farris*, No. 2:21-cv-13045, 2022 WL 831420, at *6 n.2 (E.D. Mich. Feb. 15, 2022); *Galaz v. Warren Cty.*, No. 4:22-CV-50-DCLC-SKL, 2023 WL 2801178, at *3 (E.D. Tenn. Apr. 5, 2013) ("[T]he Sixth Circuit has now ruled that obedience to the enhanced, state-law pleading procedures for medical malpractice is not required in federal court.")

Further, the cases cited by CHC Defendants in their reply to support their request that the undersigned find the statutes to be substantive predate the Sixth Circuit's ruling in *Albright*. (ECF No. 26, PageID.274). And CHC Defendants have not provided any reasoning as to why the *Albright* holding should not apply in cases where the basis for jurisdiction is federal question jurisdiction rather than diversity. Accordingly, the undersigned recommends denying the motion to dismiss the medical malpractice claim.

### iv.  ADA and Rehabilitation Act Claims

Plaintiff claims that Defendants Natole and Jane Doe's "failure to accommodate Mr. Putman's disability was done in violation of Title II of the ADA and § 504 of the Rehabilitation Act." (ECF No. 19, PageID.158 ¶ 105). They also allege that Defendants' denial of jail credit for the time he was receiving emergency medical care is evidence that Defendants denied Plaintiff jail services due to his disability. (*Id.* at ¶ 104). Defendants Natole and Jane Doe counter that Plaintiff fails to allege any facts supporting elements two and three of the ADA analysis test. (ECF No. 21, PageID.237). In essence, Plaintiff fails to identify the benefit or service at issue in his claim, and "fails to state how his alleged disability led to him being deprived of equal access to some service or accommodation." (*Id.* at  PageID.237–38).

Title II of the ADA provides, in pertinent part, that no qualified individual with a disability shall, because of that disability, "be denied of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Mingus v. Butler*, 591 F.3d 474, 481–82 (6th Cir. 2010) (citing 42 U.S.C. § 12132.  In order to state a claim under Title II of the ADA, Plaintiff must show: 1) that he is a qualified individual with a disability; 2) that defendants are subject to the ADA; and 3) that he was denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or was otherwise discriminated against by defendants, by reason of his disability.  *See Tucker v. Tennessee*, 539 F.3d 526, 532–33 (6th Cir. 2008).

Plaintiff's allegations amount to nothing more than a suggestion that Defendants Natole and Jane Doe failed to provide him with treatment despite his disability not because of it, and fail to allege facts to satisfy the third element of the test.  This distinction is important as "neither the RA nor the ADA provide a cause of action for medical malpractice."  *Baldridge-El v. Gundy*, No. 99-2387, 2000 WL 1721014, at *2 (6th Cir. Nov. 8, 2000); *Centaurs v. Haslam*, No. 14-5348, 2014 WL 12972238, at *1 (6th Cir. Oct. 2, 2014) ("Although [Plaintiff] may have a viable civil rights claim under 42 U.S.C. § 1983 for inadequate medical care, he has failed to state a prima facie case under the parameters of the ADA.").  Accordingly, the undersigned finds that Plaintiff has failed to state a claim against Defendants Natole

24

and Jane Doe for the violation of the ADA or the RA.  *Causey v. Ouellette*, No. 1:23-cv-884, 2023 WL 6864822, at *3 (W.D. Mich. Oct. 18, 2023) (dismissing plaintiff's ADA and RA claims for failure to allege that defendants denied plaintiff treatment because of any disability he suffered); *Burger v. Bloomberg*, 418 F.3d 882, 883 (8th Cir. 2005) (holding that a Rehabilitation Act and/or an ADA claim cannot be based on medical treatment decisions); *Kensu v. Rapelje*, No. 12-11877, 2015 WL 5302816, at *4 (E.D. Mich. Sept. 10, 2015).

### v.  John Does 1 to 5 Should Be Dismissed

As to Defendant John Does 1 to 5, the undersigned recommends that they be dismissed without prejudice.  "An inmate who brings a civil rights complaint must specifically identify each defendant against whom relief is sought and must give each defendant notice of the action by serving upon him a summons and copy of the complaint."  *Reed-Bey v. Pramstaller*, No. 06-10934, 2007 WL 2421422 at *2 (E.D. Mich. Aug. 23, 2007) (citing *Feliciano v. DuBois*, 846 F. Supp.1033, 1048 (D. Mass. 1994)).  Under Fed. R. Civ. P. 4(m), defendants must be served within 90 days of filing the complaint.  Here, Plaintiff failed to identify or serve John Does 1 to 5 and this case has been pending for over 90 days (since May 2023); thus dismissal of these defendants would be proper.  *See Mackall v. Doe*, No. 05-60083-AA, 2005 WL 1843449 at *1 (E.D. Mich. July 29, 2005).

### C.    Conclusion

For the following reasons, **I RECOMMEND** that the Court **GRANT** CHC Defendants' motion to dismiss **IN PART** (ECF No. 21), **DENY** CHC Defendants' May 9 motion to dismiss as **MOOT** (ECF No. 16), and *sua sponte* dismiss John Does 1 to 5.

## III.    <u>REVIEW</u>

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1.) Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981.) The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d.) The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: January 9, 2024            S/ PATRICIA T. MORRIS
                                 Patricia T. Morris
                                 United States Magistrate Judge