UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

WILLIAM E. PUTMAN II,

|  |  |
|---|---|
| Plaintiff, | Case No. 1:23-cv-10427 |
| v. | Honorable Thomas L. Ludington<br>United States District Judge |
| COUNTY OF TUSCOLA, et al., |  |
| Defendants. | Honorable Patricia T. Morris<br>United States Magistrate Judge |

_____/

**OPINION AND ORDER (1) SUSTAINING IN PART PLAINTIFF'S OBJECTIONS, (2) OVERRULING CHC DEFENDANTS' OBJECTION AS MOOT, (3) ADOPTING REPORT AND RECOMMENDATION IN PART, (4) DENYING AS MOOT CHC DEFENDANTS' MOTION TO DISMISS, (5) GRANTING IN PART CHC DEFENDANTS' RENEWED MOTION TO DISMISS, (6) DISMISSING WITH PREJUDICE DEFENDANTS JOHN DOES 1–5, AND (7) DISMISSING WITH PREJUDICE PLAINTIFF'S ADA AND RA CLAIMS AGAINST CHC DEFENDANTS**

In October 2022, Plaintiff William E. Putman was taken to the Tuscola County Jail (TCJ) to serve a 30-day sentence. Upon his arrival, Putman informed the jail staff that he had a serious heart condition that required uninterrupted use of his prescription medication. Putman's son—a medical doctor—brought his medication to the jail and told TCJ staff about the medication's importance. Specifically, Putman's son told TCJ's Medical Director and Nurse—both employees of Correctional Health Care (CHC)—that Putman needed his prescription medication. But Putman never received his medication, and three days after he entered TCJ, he suffered an acute cardiac arrythmia, which obstructed his coronary arteries, resulted in multiple surgeries, and required weeks of treatment and care at a nearby hospital. In February 2023, Putman sued Tuscola County, TCJ staff, CHC, and CHC employees, alleging claims of deliberate indifference to his serious medical need in violation the Eighth Amendment, medical malpractice, and violations of the Americans with Disabilities Act and the Rehabilitation Act.

The CHC Defendants filed a Motion to Dismiss, and Magistrate Judge Patricia T. Morris issued a report (R&R) recommending that this Court partially grant CHC's Motion to Dismiss. Both Plaintiff and the CHC Defendants filed objections to the R&R, which are now before this Court.

## I.

## A.

According to Plaintiff William E. Putman II's First Amended Complaint,[1] he is a 62-year-old man with a "history of congestive heart failure." ECF No. 19 at PageID.131, 138. In September 2022, a Tuscola County jury found him guilty of four misdemeanor charges of "assault or assault and battery." *Michigan v. Putman*, 22-0129SM-SM (Mich. 71B Dist. Tuscola Cnty.); *see also* ECF No. 19 at PageID.138. Before sentencing, the Tuscola County Probation Office submitted a presentence investigation report to the sentencing judge that outlined Plaintiff's congestive heart failure and the "specific treatment and medication" Plaintiff required. *Id.* at PageID.138–39. Plaintiff submitted a sentencing memorandum that "emphasized his serious heart condition" and attached a letter from his treating specialist who opined that "incarceration would be harmful to [Plaintiff's] health." *Id.*

On October 4, 2022, Plaintiff appeared for his sentencing hearing before Tuscola County District Judge Jason E. Bitzer. *Id.* Plaintiff was sentenced to "12 months of probation with the first 30 days to be served in [Tuscola County Jail]." *Id.* Immediately after the hearing ended, Tuscola County Sherriff's Officers transported Plaintiff to TCJ. *Id.*

---

[1] At the motion to dismiss stage, this Court must assume the facts as alleged in Plaintiff's First Amended Complaint, ECF No. 19, are true and evaluate the legal adequacy of those facts. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[A] complaint must contain sufficient factual matter, *accepted as true*, to 'state a claim to relief that is plausible on its face.'" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (emphasis added)).

During Plaintiff's intake at TCJ, Plaintiff told TCJ staff about his serious heart conditions and necessary prescription medication. *Id.* at PageID.140. Importantly, one of Plaintiff's "necessary prescription medications," *id.*, was metoprolol, a drug that includes an FDA-approved warning label stressing that "abrupt cessation of the drug" is linked to angina[2] and myocardial infarction[3] and that discontinuation of the drug "requires a gradual reduction and careful monitoring[.]" *Id.* at PageID.142. After Plaintiff told TCJ staff about his "necessary prescription medications," he alleges TCJ staff "transferred [him] to an observation cell without referring him for further medical assessment." *Id.*

Meanwhile, Plaintiff's two sons—"Billy and Dr. Putman"—"discussed their father's heart conditions and necessary medication with" Defendant Kyle Nordstrom, a TCJ Corrections Officer who was working that day. *Id.* Dr. Putman explained to Defendant Nordstrom that he was Plaintiff's primary care physician and that Plaintiff "required uninterrupted administration of his cardiac prescription medications, including metoprolol, clopidogrel,[4] and atorvastatin.[5]" *Id.* at

---

[2] Angina, also referred to as angina pectoris, is a "type of chest pain caused by reduced blood flow to the heart" and is a common symptom of coronary artery disease. Individuals who experience angina describe a "squeezing, pressure, heaviness, [or] tightness" in their chest. *Angina*, MAYO CLINIC (March 22, 2024), https://www.mayoclinic.org/diseases-conditions/angina/symptoms-causes/syc20369373#:~:text=Angina%20(an%2DJIE%2Dnuh,also%20is%20called%20angina%20pectoris. [https://perma.cc/3C9M-PM22].

[3] Myocardial infarction is a technical term for a heart attack, caused by the decreased or complete cessation of blood flow from a portion of the myocardium. *Myocardial Infraction*, NAT'L LIBR. OF MED. (last updated Aug. 8, 2023), https://www.ncbi.nlm.nih.gov/books/NBK537076/#:~:text=Myocardial%20infarction%20(MI)%2C%20colloquially,hemodynamic%20deterioration%20and%20sudden%20death. [https://perma.cc/X7KS-JVYX].

[4] Clopidogrel is a blood platelet inhibitor which reduces the chance that a harmful blood clot will block an individual's arteries. *Clopidogrel (Oral Route)*, MAYO CLINIC (last updated March 1, 2024), https://www.mayoclinic.org/drugs-supplements/clopidogrel-oral-route/description/drg-20063146 [https://perma.cc/P3YB-3BVC].

[5] Atorvastatin is a medication used to lower cholesterol and fat levels in the blood to prevent chest pain, heart attacks, and strokes. *Atorvastatin (Oral Route)*, MAYO CLINIC (last updated March 1, 2024), https://www.mayoclinic.org/drugs-supplements/atorvastatin-oral-route/description/drg-

PageID.140. Plaintiff's sons received permission from Defendant Nordstrom to bring Plaintiff's prescriptions to TCJ and delivered "the metoprolol prescription, along with Dr. Putman's written orders," to TCJ. *Id.* But around 11:00 PM later that day, Plaintiff "informed his children" that Defendants had not given him any of his prescription medications, "despite his repeated requests." *Id.* at PageID.140–41.

The next morning, Dr. Putman called "TCJ's Site Medical Director and sole physician, Defendant [Dr. Joseph] Natole," but Defendant "Natole did not take Dr. Ptuman's call." *Id.* at PageID.141. Accordingly, Dr. Putman "left Natole an urgent message about their mutual patient's serious cardiac condition and its management with daily metoprolol." *Id.* But, Plaintiff alleges, no one from Defendant Natole's office returned Dr. Ptuman's call. *Id.*

Having received no response by 6:00 PM that day, Dr. Putman "drove back to TCJ" and "pleaded with CHC's employee, [Defendant] Nurse Doe," explaining the urgency and importance of Plaintiff being given his medications and that "without uninterrupted use of his prescription metoprolol and other medications, it was obvious that his father risked death." *Id.*

After Dr. Putman's conversation with Defendant Nurse Doe, Plaintiff "eventually received" a single dose of an "unknown medication contrary to Dr. Putman's prescription and written instructions," later that night. *Id.* Afterwards, Plaintiff spoke with his sons through TCJ's videoconference system and told them he had still not received his prescription medications. *Id.* at PageID.142. Plainitff's sons reported he seemed "disoriented" and "repeatedly stat[ed] that he was thirsty." *Id.*

---

20067003#:~:text=Descriptions,fats%20clogging%20the%20blood%20vessels.[https://perma.cc/G9B8-KSN5].

After the video call with his sons, Plaintiff "complained to Defendants that he was having chest pain, difficulty breathing, nausea, vomiting, and swelling in his extremities." *Id.* Plaintiff alleges "his complaints went unanswered" and "Defendants ignored his pleas for help." *Id.* at PageID.142–43.

On October 7, 2022, Plaintiff was "rushed by ambulance to McLaren Regional Hospital in Caro, Michigan." *Id.* at PageID.143. After testing and evaluation, doctors recommended that Plaintiff "receive a transesophageal echocardiogram and cardioversion," and that he be transferred to the University of Michigan Hospital in Ann Arbor. *Id.* During the ambulance ride to University of Michigan Hospital, Plaintiff "lost consciousness," and evaluation upon arrival at University of Michigan Hospital "confirmed that [Plaintiff] was experiencing acute coronary syndrome[6] and atrial fibrillation."[7] *Id.* As a result, Plaintiff "underwent multiple surgeries and spent several weeks in the hospital" before serving the remainder of his 30-day jail sentence. *Id.*

**B.**

In February 2023, Plaintiff sued Tuscola County, CHC, Dr. Joseph Natole, M.D., Nurse Jane Doe, LPN, John Does 1-5,[8] Glenn Skrent, Robert Baxter, Brian Harris, Kyle Nordstrom, and Ryker Maurer. ECF No. 1. He alleged all Defendants were deliberately indifferent to his serious

---

[6] Acute coronary syndrome is a term that describes the sudden, reduced blood flow to the heart, often causing individuals severe chest pain and discomfort. *Acute Coronary Syndrome*, MAYO CLINIC (May 16, 2023), https://www.mayoclinic.org/diseases-conditions/acute-coronary-syndrome/symptoms-causes/syc-20352136 [https://perma.cc/AA2E-TV8R].

[7] Also known as "AFib," atrial fibrillation describes an irregular and "very rapid" heart rhythm which can lead to blood clots in the heart. *Atrial Fibrillation*, MAYO CLINIC (March 8, 2024) https://www.mayoclinic.org/diseases-conditions/atrial-fibrillation/symptoms-causes/syc-20350624#:~:text=Atrial%20fibrillation%20(AFib)%20is%20an,and%20other%20heart%2Drelated%20complications. [https://perma.cc/7K48-HQKK].

[8] Plaintiff alleges that John Does 1–5 "were, at all relevant times, correctional officers or medical staff at TCJ and employees or subcontractors of either the Tuscola County Sheriff's Office or CHC." ECF No. 19 at PageID.137.

medical needs, in violation of the Eighth Amendment, and that CHC and Tuscola County were liable as municipalities under *Monell*. ECF No. 19. He also alleges that CHC, Dr. Natole, and Nurse Doe are liable for medical malpractice under Michigan law; (2) that Tuscola County, Nordstrom, Natole, and Nurse Doe violated the Americans with Disabilities Act and the Rehabilitation Act; and (3) that Tuscola County, Skrent, Baxter, Harris, Maurer, and Nordstrom, retaliated against Plaintiff for his public opposition of a bond proposal to fund the construction of a new jail. *Id.*

On May 9, 2023, CHC, Nurse Doe, and Joseph Natole ("the CHC Defendants") filed a joint motion to dismiss. ECF No. 16. In response, Plaintiff filed his First Amended Complaint. ECF No. 19. Two weeks later, the CHC Defendants filed a Renewed Motion to Dismiss addressing Plaintiff's First Amended Complaint. ECF Nos. 19; 21. Both motions were referred to Magistrate Judge Patricia T. Morris, ECF No. 23, and on January 9, 2024, Judge Morris issued a report (R&R) recommending Defendants' Renewed Motion to Dismiss, ECF No. 21, be granted in part, and that this Court *sua sponte* dismiss John Does 1-5. ECF No. 27. She also recommended that Defendants' first Motion to Dismiss, ECF No. 16, be denied as moot.

Both Plaintiff and Defendants objected to the R&R. *See* ECF Nos. 28; 29.

## II.

### A.

A party may object to and seek review of a magistrate judge's report and recommendation. *See* FED. R. CIV. P. 72(b)(2). If a party objects, then "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." FED. R. CIV. P. 72(b)(3). The parties must state any objections with specificity within a reasonable time. *Thomas v. Arn*, 474 U.S. 140, 151 (1985) (citation omitted).

Failure to file specific objections constitutes a waiver of any further right of appeal. *Id.* at 155; *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981). Parties may not "raise at the district court stage new arguments or issues that were not presented" *before* the magistrate judge's final R&R. *See Murr v. United States*, 200 F.3d 895, 902 n.1 (6th Cir. 2000).

When reviewing an R&R *de novo*, this Court must review at least the evidence that was before the magistrate judge. *See Hill v. Duriron Co.*, 656 F.2d 1208, 1215 (6th Cir. 1981). After reviewing the evidence, the court is free to accept, to reject, or to modify the magistrate judge's findings or recommendations. FED. R. CIV. P. 72(b)(3); *Peek v. Comm'r of Soc. Sec.*, No. 1:20-CV-11290, 2021 WL 4145771, at *2 (E.D. Mich. Sept. 13, 2021).

## B.

Under Civil Rule 12(b)(6), a pleading fails to state a claim if it does not contain allegations that support recovery under any recognizable theory. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When considering a Rule 12(b)(6) dismissal, the court must accept all factual allegations of the complaint as true and will construe the pleading in favor of the nonmovant. *See Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008). The plaintiff need not provide "detailed factual allegations" to survive dismissal, but the "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In essence, the plaintiff's complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," but the court need not accept as true the complaint's legal conclusions. *Iqbal*, 556 U.S. at 678–79 (quotations and citation omitted).

### III.

The CHC Defendants' sole objection argues that the R&R erred in not addressing whether this Court should retain supplemental jurisdiction over Plaintiff's state law claims, if all federal-question claims were dismissed. ECF No. 28. Plaintiff lodges seven objections concerning the dismissal of Plaintiff's deliberate-indifference claim against Defendant Natole (Objections 1–3), Plaintiff's deliberate-indifference and medical-malpractice claims against Defendant Nurse Doe (Objections 4 and 6), Plaintiff's *Monell* claim against CHC (Objection 5), and Plaintiff's ADA and RA claims against Defendants Natole and Nurse Doe (Objection 7). Each objection will be addressed in turn.

### A. Plaintiff's Objections 1, 2, and 3: Deliberate Indifference against Defendant Natole

Plaintiff's first three objections to the R&R relate to the Magistrate Judge's conclusion that Plaintiff did not plead sufficient facts to state a claim for Eighth Amendment deliberate indifference against Defendant Natole. *See* ECF No. 29 at PageID.311 (objecting to the conclusion that the Amended Complaint contains only two factual statements involving Defendant Natole); ECF No. 29 at PageID.314 (objecting to the conclusion that Plaintiff's Amended Complaint did not contain allegations that Plaintiff or either of his sons directly spoke to Defendant Natole); ECF No. 29 at PageID.315 (objecting to the conclusion that Plaintiff failed to state a deliberate-indifference claim against Defendant Natole).

Under 42 U.S.C. § 1983, a plaintiff may sue any "person" who, under the color of state law, subjects any citizen to the deprivation of any rights, privileges, or immunities secured by the Constitution *See* 42 U.S.C. § 1983. Accordingly, to "prevail on a cause of action under § 1983, a plaintiff must prove (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Winkler v. Madison Cnty.*, 893

F.3d 877, 890 (6th Cir. 2018); *Shadrick v. Hopkins Cnty.*, 805 F.3d 724, 736 (6th Cir. 2015); *see also Jones v. Muskegon Cnty.* 625 F.3d 935, 941 (6th Cir. 2015).

The Eighth Amendment guarantees the right to be free from cruel and unusual punishment. U.S. CONST. amend. VIII. A prisoner asserting a deliberate-indifference claim under the Eight Amendment must show: (1) an objectively serious medical need, and "(2) that the defendant knew 'of and disregard[ed] an excessive risk to [the prisoner's] health or safety.'" *Est. of Abbey v. Herring*, 598 F. Supp. 3d 572, 583–84 (E.D. Mich. 2022) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Rhinehart v. Scutt*, 894 F.3d 721, 737–38 (6th Cir. 2018)). Under the second, subjective prong, a plaintiff must demonstrate a high standard of culpability, equivalent to criminal recklessness. *Id.*; *Greene v. Crawford Cnty.*, 22 F.4th 593, 605 (6th Cir. 2022); *Griffith v. Franklin Cnty.*, 975 F.3d 554, 568 (6th Cir. 2020). In other words, the plaintiff must show that each defendant "'subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk' by failing to take reasonable measures to abate it." *Rhinehart*, 894 F.3d at 738 (quoting *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001)).

The R&R concluded that Plaintiff had not plausibly pleaded a deliberate-indifference claim against Defendant Natole because Plaintiff did not plead sufficient facts to establish Defendant Natole's "personal involvement or subjective awareness" of his alleged medical need. ECF No. 27 at PageID.290. Plaintiff objected, arguing his operative Complaint contained many facts establishing Defendant Natole's involvement, and that the specific factual allegation that Dr. Putman left a message for Defendant Natole satisfied the subjective component of the deliberate-indifference analysis at the motion-to-dismiss stage. ECF No. 29 at PageID.311–15.

The facts alleged in Plaintiff's First Amended Complaint, ECF No. 19, are sufficient to state a deliberate-indifference claim against Defendant Natole. Beginning with the first, objective prong, Plaintiff alleges the uninterrupted use of his heart medications was an objectively serious medical need. *See* ECF No. 19 at PageID.138–39 ("Mr. Putman had a history of congestive heart failure and was currently receiving specific treatment and medication."); PageID.140 ("Mr. Putman required uninterrupted administration of his cardiac prescription medications, including metoprolol[.]"); PageID.142 ("[The] FDA-approved warning label for Mr. Putman's metoprolol proscription warns that 'abrupt cessation' of the drug is linked to angina and myocardial infarction[.]"). *See Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008) (noting an objectively serious medical need includes conditions that have been "diagnosed by a physician as mandating treatment" or that are "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." (citing *Blackmore v. Kalamazoo County*, 390 F.3d 890, 897 (6th Cir. 2004))).

Plaintiff also pleads sufficient facts to establish the second, subjective prong to state a deliberate-indifference claim against Defendant Natole. Plaintiff alleges:

> On the morning of October 5, 2023, Dr. Putman called the office of TCJ's Site Medical Director and sole physician, Defendant Natole. Yet Natole did not take Dr. Putman's call. Still, Dr. Putman left Natole an urgent message about their mutual patient's serious cardiac condition and its management with daily metoprolol. Unsurprisingly, neither Natole nor anyone from his office ever returned Dr. Putman's phone call.

ECF No. 19 at PageID.141. Plaintiff's First Amended Complaint also alleges that Defendants Natole and Nurse Doe gave Plaintiff medication later that night that was "contrary to Dr. Putman's prescription and written instructions." *Id.*

In sum, Plaintiff's Complaint, which asserts that Dr. Putman left a message with Defendant Natole, pleads sufficient facts to survive Defendant Natole's Motion to Dismiss. Although there may be a dispute about whether Defendant Natole *received* Dr. Putman's message, that dispute is

best resolved through discovery and at summary judgment. *See Farthing v. Bluegrass Reg'l Recycling Corp.*, No. 5:20-CV-277-CHB, 2023 WL 6395583, at *15 (E.D. Ky. Sept. 29, 2023) (concluding, *at summary judgment*, that medical-provider defendant had no knowledge of serious medical need where facts showed that the medical-provider defendant never responded to a text message, testified she was unaware of the text when it was sent, *and* the content of the text message suggested that other providers were handling the situation properly); *Forton v. Cnty. of Ogemaw*, 435 F. Supp. 2d 640, 655 (E.D. Mich. 2006), *aff'd sub nom. Forton v. Ogemaw Cnty.*, 246 F. App'x 309 (6th Cir. 2007) (dismissing plaintiff's deliberate-indifference claim *at summary judgment* where voicemail message left on medical-provider defendant's work telephone did not convey the seriousness of the medical condition).

Accordingly, Plaintiff's Objections 1, 2, and 3 will be sustained, and the Magistrate Judge's R&R will be overruled to the extent it concludes Plaintiff failed to state a claim against Defendant Natole and recommends dismissal of Plaintiff's deliberate-indifference claim against him.

## B. Plaintiff's Objection 4: Deliberate Indifference against Nurse Doe

Plaintiff also objects to the R&R's conclusion that he failed to state a deliberate-indifference claim against Defendant Nurse Doe. *See* ECF No. 29 at PageID.321–24. The R&R concluded that Plaintiff's allegation that Defendant Nurse Doe "administered medication other than Plaintiff's prescriptions to him" was insufficient to allege conscious disregard of Plaintiff's medical need. ECF No. 27 at PageID.291.

But "a decision to provide an 'easier and less efficacious treatment' may suffice to establish deliberate indifference." *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017) (quoting *Warren v. Prison Health Servs., Inc.*, 576 Fed. Appx. 545, 552 (6th Cir. 2014)). This is especially so where, as here, there is no apparent "medical reason" that Defendant Nurse Doe dispensed a different

medication to Plaintiff, and the serious medical need was the abrupt cessation of one *specific* medication—metoprolol. *Id.* True, as Judge Morris noted, Defendant Nurse Doe's decision to provide a different medication could be nothing more than a difference in medical opinion, that would hardly violate Plaintiff's Eighth Amendment rights. *See* ECF No. 27 at PageID.292; *see also Collins v. Warren Cnty., Tennessee*, No. 4:22-CV-49-KAC-SKL, 2023 WL 4189653, at *3 (E.D. Tenn. June 26, 2023) ("A prison doctor may prescribe an adequate, alternative treatment without violating the Eighth Amendment." (citing *Rhinehart v. Scutt*, 894 F.3d 721, 742 (6th Cir. 2018))). But the factual adequacy of the treatment Defendant Nurse Doe provided is best determined at summary judgment. The Complaint alleges Defendant Nurse Doe was aware of Plaintiff's specific need for metoprolol, was aware of the risks if he did not receive it, and chose to dispense a *different* medication. Thus, Plaintiff has sufficiently alleged that Defendant Nurse Doe disregarded his serious medical need by only providing him with a different medication. *See Darrah v. Krisher*, 865 F.3d 361, 368 (6th Cir. 2017) (citing *Boretti v. Wiscomb*, 930 F.2d 1150, 1154 (6th Cir. 1991)) (reiterating that the interruption of a prescribed treatment plan may violate the constitution).

Accordingly, Plaintiff's Objection 4 will be sustained, and the R&R will be overruled to the extent it concluded Plaintiff failed to state a claim against Defendant Nurse Doe and recommended dismissal of Plaintiff's deliberate-indifference claim against her.

### C. Plaintiff's Objection 5: *Monell* Claim against CHC

Plaintiff alleges CHC[9] is liable under *Monell* for policies and practices that caused its employees to violate Plaintiff's constitutional rights. *See* ECF No. 19 at PageID.147–53. But the

---

[9] Since *Monell*, the Sixth Circuit has held that private entities, like CHC, may also be treated as "persons" and subject to § 1983 liability when the entity performs traditional state functions like providing medical care to inmates or arrestees. *Winkler*, 893 F.3d at 904 ("A private entity . . . that

R&R concluded that Plaintiff's *Monell* claim against CHC should be dismissed. ECF No. 29 at PageID.325–28. Plaintiff objects, arguing he sufficiently alleged CHC's *Monell* liability under three distinct theories.

In *Monell*, the Supreme Court held that municipalities can be treated as "persons" and subject to § 1983 liability. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). But a municipality cannot be liable for § 1983 deprivations merely because they employ an officer who violates § 1983. *Monell*, 326 U.S. at 691. ("[A] municipality cannot be held liable under § 1983 on a respondent superior theory."). And a municipality cannot be liable if their officers commit no constitutional violation in the first place. *Roell v. Hamilton Cnty.*, 870 F.3d 471, 487 (6th Cir. 2017).

Municipalities are only liable under *Monell* for their "official policies" which *cause* an employee to violate another's constitutional rights. *Monell*, 436 U.S. at 692. Generally, there are four "avenues a plaintiff may take to prove the existence of a [defendant's] illegal policy or custom. The plaintiff can look to (1) the [defendant's] legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations." *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986). But, even when a plaintiff can show a sufficient official policy, a plaintiff must also "connect the policy to the municipality, and [] show that [the] particular injury was incurred due to the execution of that policy." *Vereecke v. Huron Valley School Dist.*, 609 F.3d 392, 404 (6th Cir. 2010).

---

contracts to provide medical services at a jail can be held liable under § 1983 because it is carrying out a traditional state function"); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 817–18 (6th Cir. 1996) (treating a private prison corporation as a "person" for the purpose of. § 1983).

- 13 -

Here, Plaintiff pursues the latter three avenues of *Monell* liability, each of which will be discussed below.

### 1. Final Decisionmaker

Plaintiff first alleges that CHC is liable under *Monell* broadly because Defendant Natole, the Site Medical Director and physician, acted with final decision-making authority while Plaintiff was confined at TCJ. *See* ECF No. 19 at PageID.152–53. To succeed on this "final decisionmaker" theory of *Monell* liability, a plaintiff must show that an official "responsible for establishing final policy with respect to the subject in question" made a "deliberate choice to follow a course of action . . . from among various alternatives" and that the final decisionmaker's chosen course of action caused the plaintiff's harm. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986).

As a threshold matter, to the extent Plaintiff attempts to assert CHC is liable under *Monell* because Defendant Natole was "an official with final authority" who "made a deliberate choice to interfere with [Plaintiff's] treatment plan," ECF No. 34 at PageID.459, *see also* ECF No. 19 at PageID.153, any such theory of *Monell* liability is without merit. A municipality may not be held liable under § 1983 on a *respondeat superior* vicarious liability theory—in other words, 'solely because it employs a tortfeasor.'" *D'Ambrosio v. Marino*, 747 F.3d 378, 388–89 (6th Cir. 2014) (quoting *Monell*, 436 U.S. at 691). In sum, CHC may not be liable simply because Defendant Natole may have been deliberately indifferent to Plaintiff's serious medical need in violation of the Eighth Amendment.

To the extent Plaintiff argues that Defendant Natole was a final decisionmaker who "ratified TCJ and CHC's policy and custom of not providing in-person physician services," ECF No. 19 at PageID.153, he has not pleaded any facts suggesting that Defendant Natole's decisions regarding in-person physician services were not subject to review by CHC or TCJ, or that

- 14 -

Defendant Natole possessed any authority to "formulate plans for the implementation of broad goals" regarding in-person physician services at TCJ. *Miller v. Calhoun Cnty.*, 408 F.3d 803, 814 (6th Cir. 2005) (quoting *Hager v. Pike Cnty. Bd. Of Educ.*, 286 F.3d 366, 376 (6th Cir. 2002)). Accordingly, Plaintiff has not sufficiently pleaded a "final decisionmaker" *Monell* claim.

## 2. Failure to Train or Supervise

Plaintiff next alleges CHC is liable under *Monell* for failing to adequately staff, train, and supervise employees to provide necessary medical care to inmates at TCJ. ECF No. 19 at PageID.147–48.

To succeed on his "failure to train or supervise" theory of *Monell* liability, Plaintiff must prove that (1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of CHC's deliberate indifference; and (3) the inadequacy was closely related to or directly caused the injury. *Ellis ex rel. Pendergrass v. Cleveland Mun. School Dist.*, 455 F.3d 690, 700–01 (6th Cir. 2006) (citing *Russo v. City of Cincinnati*, 953 F.2d 1036, 1046 (6th Cir. 1992)). There are "at least two situations in which inadequate training could be found to be the result of deliberate indifference." *Cherrington v. Skeeter*, 344 F.3d 631, 646 (6th Cir. 2003). A plaintiff can demonstrate deliberate indifference by showing that the municipality "was aware of 'prior instances of unconstitutional conduct' such that [the municipality] 'was clearly on notice that the training in this particular area was deficient and likely to cause injury' and yet 'ignored a history of abuse.'" *Victor v. Reynolds*, 582 F. Supp. 3d 516, 522 (E.D. Mich. 2022) (quoting *Fisher v. Harden*, 398 F.3d 837, 849 (6th Cir. 2005)). A plaintiff can also demonstrate a municipality's *Monell* liability by showing that the municipality failed to equip its nurses with specific tools necessary to handle recurring situations. *See Victor*, 582 F. Supp. 3d at 522 (citing *Bd. Of Cnty. Comm'rs of Bryan Cnty. V. Brown*, 520 U.S. 397, 409 (1997)). Under this approach, a plaintiff

does not need to prove that the municipality was on notice of a pattern of unconstitutional conduct, but only that "the risk of the constitutional violation was so obvious or foreseeable that [the municipality] was deliberately indifferent for failing to prepare the [medical provider] for it." *Victor*, 582 F. Supp. 3d at 523 (citing *Connick v. Thompson*, 563 U.S. 51, 63 (2011)). Plaintiff contends he has sufficiently alleged both approaches. ECF No. 29 at PageID.326.

But Plaintiff's First Amended Complaint does not allege any "prior instances of unconstitutional conduct demonstrating that [*CHC*] has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury." *See Miller v. Sanilac Cnty.*, 606 F.3d 240, 255 (6th Cir. 2010) (citing *Fisher*, 398 F.3d at 849). True, Plaintiff cites the National Sheriff's Association's 2018 report regarding the adequacy of TCJ's policies, procedures, and operations. *See* ECF No. 19 at PageID.148–49. But this report says *nothing* about CHC's failure to train or supervise its employees. *See id.* To the contrary, it alleges that many of the inadequate medical policies and procedures at TCJ are a direct result of *TCJ's* failure to adequately train its jail staff to conduct risk and health assessments during intake procedures. *See id.* at PageID.148. And it notes that *TCJ* should "[c]onsider extending contractual coverage" to better assess people during intake. *Id.* at PageID.149. In sum, although Plaintiff may have stated a claim against TCJ under this theory, he has not stated one against CHC.

Plaintiff argues he has stated a failure-to-train *Monell* claim under the "single-incident liability" theory by alleging that CHC "failed to provide Nurse Doe specific training on inmate health care, including assessing and documenting medical conditions of inmates, obtaining physician orders, providing ordered treatments to inmates, monitoring patient progress, or providing necessary emergency care to inmates." ECF No. 19 at PageID.150.

Plaintiff's allegations that CHC failed to train its employees regarding inmate healthcare are, at this juncture, sufficient to survive CHC's Motion to Dismiss. Plaintiff alleges that his son, Dr. Putman, "explained to [Defendant Nurse Doe] that his father suffered from several serious cardiac conditions and without uninterrupted use of his prescription metoprolol and other medications, it was obvious that his father risked death." ECF No. 19 at PageID.141. Plaintiff further alleges that despite this conversation, Defendant Nurse Doe only dispensed "a single dose of an unknown medication contrary to Dr. Putman's prescription and written instructions," *id.* and that Nurse Doe "lacked the specific tools and competency to handle chronic care patients like [Plaintiff]," such that it was obvious that her lack of training regarding procuring physician's orders and providing prescribed treatments in a jail setting was "so likely to result in the violation of constitutional rights," that CHC can reasonably be said to have been deliberately indifferent to the need.[10] *Victor*, 582 F. Supp. 3d at 522; *City of Canton*, 489 U.S. at 390, 109 S. Ct. 1197. Accordingly, Plaintiff's objections will be sustained and the R&R will be overruled to the extent Plaintiff's *Monell* claim under a failure-to-train theory may proceed.

### 3. Custom of Tolerance or Acquiescence

Plaintiff next alleges that CHC is liable under *Monell* because it tolerated or acquiesced the "policy and custom of not providing in-person physician services." ECF No. 19 at PageID.153.

---

[10] Although Plaintiff's failure-to-train claim will survive CHC's Motion to Dismiss, it is worth noting that *why* Nurse Doe chose to dispense a different, unknown medication will be important at summary judgment because Plaintiff must be able to prove that CHC's failure to train–rather than some other unknown circumstance–*caused* the different dose. For example, *if* she dispensed a different, unknown medication to Plaintiff because she could not obtain physician's orders to dispense it, or because she was exercising her professional, medical judgment, CHC's training seems irrelevant. If, on the other than, she did not *know how* to provide the prescription to Plaintiff, CHC's failure to train its employees is more directly the cause of Plaintiff's injuries.

According to Plaintiff, "neither Natole nor any other physician provided in-person medical care at TCJ." *Id.*

      To show a municipality's had a custom of constitutional deprivations sufficient for *Monell* liability, a plaintiff must prove "(1) the existence of a clear and persistent pattern of illegal activity; (2) notice or constructive notice on the part of the defendant; (3) the defendant's tacit approval of the unconstitutional conduct, such that their deliberate indifference in their failure to act can be said to amount to an official policy of inaction; and (4) that the defendant's custom was the moving force or direct causal link in the constitutional deprivation." *Stanfield v. Lima*, 727 F. App'x 841, 851 (6th Cir. 2018) (internal quotation omitted). Where, as here, a custom or policy is "facially constitutional but consistently implemented to result in constitution violations with explicit or implicit ratification by [municipal] policymakers, the plaintiff 'must demonstrate that the municipal action was taken with deliberate indifference as to its known or obvious consequences. A showing of simple or even heightened negligence will not suffice.'" *Gregory v. City of Louisville*, 444 F.3d 725, 752 (6th Cir. 2006) (quoting *Bd. of County Comm'rs v. Brown,* 520 U.S. 397, 407 (1997)).

      Importantly, where the facially constitutional *custom* alleged is *not* a written policy, as is the case here based on the allegations in Plaintiff's First Amended Complaint, *see* ECF No. 19, the plaintiff must provide "evidence of a pattern of complaints consistent with his own." *Gregory v. City of Louisville*, 444 F.3d 725, 755 (6th Cir. 2006). But Plaintiff has made no allegations in his First Amended Complaint that CHC's custom of not providing in-person services has been consistently implemented to give rise to complaints by others consistent with his own complaint. *See generally* ECF No. 19. Accordingly, he has not stated a custom or tolerance theory of *Monell* liability.

**D. Plaintiff's Objection 6: Medical Malpractice Claim against Nurse Doe**

Plaintiff also asserted claims of medical malpractice against the CHC Defendants. The CHC Defendants sought dismissal, arguing that Plaintiff did not comply with Michigan's medical malpractice laws that require (1) a written notice of intent (NOI) 182 days before filing an action; and (2) an affidavit or merit to be filed with the complaint. ECF No. 21 at PageID.231–35.

Judge Morris correctly concluded that Plaintiff was not required to file an NOI or affidavit of merit, because "Michigan's affidavit-of-merit and presuit-notice requirements do not apply in diversity actions" brought in federal court. *Albright v. Christensen*, 24 F.4th 1039, 1049 (6th Cir. 2022; *see also* ECF No. 27 at PageID.297. Accordingly, her R&R recommended "denying the motion to dismiss the medical malpractice claim." *Id.* at PageID.299. But Plaintiff objected to the extent the R&R stated earlier that "if the Report [was] adopted," only "Plaintiff's medical malpractice claim against CHC and Natole" would remain. *Id.* at PageID.278. Plaintiff's are correct that this summary conclusion inadvertently omitted Plaintiff's medical malpractice claim against Nurse Doe. Accordingly, Plaintiff's Objection 6 will be sustained, and the R&R will be adopted to the extent it concludes that the CHC Defendants' Motion to Dismiss the medical malpractice claims should be denied. For clarity, the medical malpractice claims against all CHC Defendants—CHC, Natole, and Nurse Doe—will remain.

**E. Plaintiff's Objection 7: ADA and RA Claims against Defendants Natole and Nurse Doe**

Plaintiff also asserts that Defendants Natole and Nurse Doe "fail[ed] to accommodate [Plaintiff's] disability" in violation of Title II of the Americans with Disabilities Act and § 504 of the Rehabilitation Act. ECF No. 19 at PageID.158. Specifically, he alleges he was denied jail credit for the time he spent receiving emergency care outside of jail, which he alleges constitutes the denial of a service. *Id.*

Judge Morris concluded that Plaintiff did not state a claim against Defendants Natole and Nurse Doe for violations of the ADA or RA because he did not allege that Defendants Natole and Nurse Doe failed denied him any service *because of* his disability. ECF No. 27 at PageID.300–01. Plaintiff objected to Judge Morris's conclusion, arguing that his ADA claim alleges a failure to accommodate, and Judge Morris applied the elements of an intentional-discrimination claim under the ADA. ECF No. 29 at PageID.330.

"Title II of the ADA provides that 'no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.'" *S.S. v. E. Ky. Univ.*, 532 F.3d 445, 452 (6th Cir. 2008) (quoting 42 U.S.C. § 12132). Section 504 of the Rehabilitation Act establishes that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

Under the ADA, a plaintiff alleging a failure-to-accommodate claim "must show that he is disabled, was otherwise qualified to receive prison services, and was denied access to prison services because of his disability." *Douglas v. Muzzin*, No. 21-2801, 2022 WL 3088240, at *6 (6th Cir. Aug. 3, 2022).

To the extent Plaintiff attempts to assert his "accommodation request" was to receive adequate medical treatment in TCJ, *see* ECF No. 19 at PageID.158 (alleging Defendants "failed to provide a reasonable accommodation" to permit Plaintiff to "continue taking" his metoprolol), this is not an actionable ADA claim. *See Vick v. Core Civic*, 329 F. Supp. 3d 426, 443 (M.D. Tenn. 2018) (collecting cases) (noting that "courts routinely dismiss ADA suits by disabled inmates that

allege inadequate medical treatment but do not allege that the inmate was treated differently *because of* his or her disability." (emphasis added)). Indeed, Plaintiff does not allege that Defendants Natole or Nurse Doe did not dispense his medication *because of* his disability. Accordingly, Plaintiff has not plausibly stated that Defendants Natole and Nurse Doe violated the ADA and RA by not dispensing his medication.

And to the extent Plaintiff alleges that TCJ's denial of jail credit while he was in the hospital is a service he was denied because Defendants Natole and Nurse Doe failed to accommodate his disability, *see* ECF No. 29 at PageID.330, Plaintiff has not pleaded *any* facts in his First Amended Complaint suggesting that Defendants Natole and Doe—*medical providers employed by a private company*—were involved in the decision to deprive Plaintiff of jail credit. Thus, even assuming "jail credit" is a "service" for the purposes of the ADA or RA—an issue this Court need not analyze—Plaintiff has not stated an ADA or RA claim against either CHC Defendant, who had no hand in determining Plaintiff's jail credit. Plaintiff's Objection 7 will be overruled, and the R&R will be adopted to the extent it recommends dismissal of Plaintiff's ADA and RA claim against Defendants Natole and Nurse Doe.

### F. CHC Defendants' Objection: Supplemental Jurisdiction

Finally, the CHC Defendants' sole objection to the R&R concerned this Court's exercise of supplemental jurisdiction. ECF No. 28. According to Defendants, the R&R should have recommended this Court either maintain or decline supplemental jurisdiction over the remaining state law claims, if all federal claims were properly dismissed. *Id.* at PageID.306. But, upon *de novo* review, this Court has determined Plaintiff has stated valid Eighth Amendment deliberate indifference claims against the CHC Defendants, so their objection is moot, and will be overruled.

- 21 -

**IV.**

Accordingly, it is **ORDERED** that Plaintiff's Objections, ECF No. 29, are **SUSTAINED IN PART,** to the extent that Plaintiff's Objections 1, 2, 3, 4, and 6 will be sustained, and Objection 5 will be sustained in part.

Further, it is **ORDERED** that Plaintiff's Objections, ECF No. 29, are **OVERRULED IN PART**, to the extent that Objection 5 will be overruled in part and Objection 7 will be overruled.

Further, it is **ORDERED** that Defendants' Objection, ECF No. 28, is **OVERRULED AS MOOT**.

Further, it is **ORDERED** that the Magistrate Judge's Report and Recommendation, ECF No. 27, is **ADOPTED IN PART**, to the extent it recommends (1) dismissal of Plaintiff's ADA and RA claim against Defendants Natole and Doe; (2) dismissal of John Does 1-5; (3) denial of Defendant's Motion to Dismiss, ECF No. 16, as moot; and (4) denial of Defendants' Motion to Dismiss, ECF No. 21, to the extent it seeks dismissal of Plaintiff's medical-malpractice claims.

Further, it is **ORDERED** that the Magistrate Judge's Report and Recommendation, ECF No. 27, is **OVERRULED IN PART**, in all other respects.

Further, it is **ORDERED** that Defendants' Motion to Dismiss, ECF No. 16, is **DENIED AS MOOT**.

Further, it is **ORDERED** that Defendant's Renewed Motion to Dismiss, ECF No. 21, is **GRANTED IN PART** to the extent it seeks dismissal of Plaintiff's ADA and RA claims against Defendants Natole and Doe.

Further, it is **ORDERED** that Defendants' Renewed Motion to Dismiss, ECF No. 21, is **DENIED IN PART** in all other respects.

Further, it is **ORDERED** that John Does 1–5 are **DISMISSED WITH PREJUDICE**.

Further, it is **ORDERED** that Plaintiff's ADA and RA claims against Defendants Natole and Nurse Doe are **DISMISSED WITH PREJUDICE**.

Further, it is **ORDERED** that Plaintiff's *Monell* claim against CHC based on a custom or policy is **DISMISSED WITH PREJUDICE**.

Plaintiff's remaining claims against the CHC Defendants[11] are as follows:

| Count | Claim | Defendants |
|-------|-------|------------|
| I | Eight Amendment Deliberate Indifference | Natole, Nurse Doe |
| II | Eight Amendment Deliberate Indifference under *Monell* failure-to-train theory | CHC |
| III | Medical Malpractice | CHC, Natole, Nurse Doe |

**This is not a final order and does not close the above-captioned case.**

Dated: March 26, 2024                    s/Thomas L. Ludington
                                         THOMAS L. LUDINGTON
                                         United States District Judge

---

[11] Plaintiff's claims against County Defendants remain unchanged, as they were not at issue.