# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# NORTHERN DIVISION

WILLIAM E. PUTMAN, II,

        *Plaintiff,*

*v.*

COUNTY OF TUSCOLA,
CORRECTIONAL HEALTHCARE
COMPANIES, LLC, JOSEPH
NATOLE, M.D., JANE DOE,
GLEN SKRENT, ROBERT BAXTER,
BRIAN HARRIS, KYLE
NORDSTROM, and RYKER
MAURER,

        *Defendants.*

_____/

Case No. 1:23-cv-10427

Thomas L. Ludington
United States District Judge

Patricia T. Morris
United States Magistrate Judge

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON DEFENDANTS TUSCOLA COUNTY, SHERIFF GLEN SKRENT, UNDERSHERIFF ROBERT BAXTER, LIEUTENANT BRIAN HARRIS, KYLE NORDSTROM, AND RYKER MAURER'S MOTION FOR JUDGMENT ON THE PLEADINGS (ECF No. 33)

## I. RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that Defendants Tuscola County, Glen Skrent, Robert Baxter, Brian Harris, Kyle Nordstrom, and Ryker Maurer's (the "County Defendants") Motion for Judgment on the Pleadings under Fed. R. Civ. P. 12(c) (ECF No. 33) be **GRANTED IN PART**.

If the Report and Recommendation is adopted, Plaintiff's (i) official capacity claims will be dismissed as to Defendants Skrent, Baxter, and Harris; (ii) Eighth Amendment deliberate indifference claims would be dismissed as to Defendant Harris; and (iii) Plaintiff's ADA, RA, and First Amendment Retaliation claims would be dismissed against the County Defendants.

In addition, if the Report is adopted Plaintiff's Eighth Amendment deliberate indifference claim against Tuscola County, Skrent, Baxter, Nordstrom, and Maurer will remain.

## II. REPORT

### A. Introduction

Plaintiff William Putman II commenced this action under 42 U.S.C. § 1983 alleging violations of his constitutional rights, the Americans with Disabilities Act ("ADA"), and the Rehabilitation Act ("RA"). (ECF No. 19). He also alleges a state medical malpractice claim associated with the improper medical treatment he received while being housed at the Tuscola County Jail ("TCJ"). (*Id.*). Specifically, Plaintiff alleges that the policies and customs practiced by TCJ's staff, including (i) permitting Dr. Natole to disregard his obligation to provide onsite medical care, and (ii) failing to provide Putman with a medical accommodation, ultimately led to him suffering an acute cardiac arrythmia resulting in obstruction of his coronary arteries. (*Id.* at PageID.31).

2

### B.  Factual Background

Prior to Plaintiff's arrival at TCJ to serve his 30-day sentence in jail[1], his criminal defense attorney advised Defendants, the Tuscola County Prosecutor, and the trial court that Plaintiff suffered from several serious cardiovascular conditions which called for the consistent administration of his prescription heart medication, including metoprolol, clopidogrel, and atorvastatin.  (ECF No. 19, PageID.131–32, 139, ¶¶ 2, 27).   Following his conviction, Plaintiff submitted a Presentence Investigation Report where he explained that he had a history of congestive heart failure which he treated with very specific medication.  (*Id.* at PageID.138–39, ¶¶ 24–25).   His Sentencing Memorandum and treating physician's letter also emphasized his serious medical condition.  (*Id.* at PageID.139, ¶ 26).

Plaintiff informed the jail personnel of his serious condition and medical regimen, which consisted of "several daily prescription medications," during his intake at TCJ.  (*Id.* at PageID.132, 140, ¶¶ 3, 30).  His sons, William Putman III and Blake Putman, M.D., also advised Defendants of the same and, after receiving permission from Defendant Kyle Nordstrom, a corrections officer, they delivered his medication, metoprolol, along with written orders and instructions.   (*Id.* at PageID.132, 140, ¶¶ 28–30).

---

[1] Plaintiff was sentenced to 12 months of probation following a 30-day jail sentence at TCJ.

Following his intake, Plaintiff was transferred to an observation cell. (*Id.* at PageID.140, ¶ 32). On the evening of October 4, 2022, Plaintiff informed his children by phone that Defendants did not distribute his medication despite his repeated requests. (*Id.* at PageID.140, ¶ 33). The next morning, Dr. Putman contacted the office of TCJ's Site Medical Director and sole physician, Defendant Joseph Natole, but Defendant Natole "did not take Dr. Putman's call." (*Id.* at PageID.141, ¶ 34). That evening Dr. Putman returned to TCJ and advised Defendant Jane Doe of the seriousness of Plaintiff's condition and the importance of him receiving his medication uninterrupted. (*Id.* at PageID.141, ¶ 35).

Later that evening, Plaintiff was administered an unknown medication contrary to Dr. Putman's prescription and written instructions. (*Id.* at PageID.141, ¶ 36). Later that night, Plaintiff appeared disorientated during a call with his sons. (*Id.* at PageID.142, ¶ 39). He stated he had not received his medication and was thirsty. (*Id.*). After, Plaintiff "complained to Defendants that he was having chest pain, difficulty breathing, nausea, vomiting and swelling in his extremities" but his complaints went unanswered. (*Id.* at PageID.142, ¶ 40). The next day, Plaintiff's cellmate demanded assistance for Plaintiff and he was rushed by ambulance to McLaren Regional Hospital. (*Id.* at PageID.143, ¶ 42). At the hospital, testing revealed that he was "suffering from atrial fibrillation with rapid ventricular rates." (*Id.*). The doctors recommended Plaintiff receive a transesophageal echocardiogram

4

and cardioversion.  (*Id.*).  He was then transferred to the University of Michigan hospital where he underwent several surgeries, and spent an extended period of time recovering before serving the remainder of his sentence.  (*Id.* at PageID.143, ¶¶ 43–44).

Plaintiff commenced this action on February 17, 2023, and filed an amended complaint on May 30, 2023.  (ECF Nos. 1 and 19).  The claims alleged in the amended complaint are outlined in the chart below.

| Count | Claim | Defendants |
|-------|-------|------------|
| I | Eighth Amendment Deliberate Indifference to Serious Medical Needs pursuant to 42 U.S.C. § 1983 | All Individual Defendants (i.e., Natole, Nurse Doe, Skrent, Baxter, Harris, Nordstrom, and Maurer) |
| II | Eighth Amendment Deliberate Indifference to Serious Medical Needs, under *Monell*, pursuant to 42 U.S.C. § 1983 | Tuscola County, Skrent, CHC, and Natole |
| III | Medical Malpractice (State Claim) | CHC, Natole, and Nurse Doe |
| IV | Violations of the Americans with Disabilities Act (42 U.S.C. § 12101, *et seq.*), and Rehabilitation Act (29 U.S.C. § 794, *et seq.*)[2] | Tuscola County, and Nordstrom |
| V | First Amendment Retaliation pursuant to 42 U.S.C. § 1983 | Tuscola County, Skrent, Baxter, Harris, Maurer, and Nordstrom |

---

[2] Plaintiff's ADA and RA claims against Defendants Natole and Nurse Doe were dismissed with prejudice in the Court's March 26, 2024 Opinion and Order.  (ECF No. 37, PageID.571).

Plaintiff seeks economic and non-economic damages, including solatium[3] damages, and fees and costs associated with litigating this matter.  (ECF No. 19, PageID.160).

On February 13, 2024, Defendants Tuscola County, Glen Skrent, Robert Baxter, Brian Harris, Kyle Nordstrom, and Ryker Maurer ("County Defendants") filed a motion for judgment on the pleadings.  (ECF No. 33).  The motion is ready for adjudication.

### C.  Standard of Review

Pursuant to Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  A motion for judgment on the pleadings is assessed "using the same standard that applies to a review of a motion to dismiss under Rule 12(b)(6)."  *Moderwell v. Cuyahoga Cnty.*, 997 F.3d  653, 659 (6th Cir. 2021) (citations omitted).  "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment."  *Jackson v. Pro. Radiology Inc.*, 864 F.3d 463, 466

---

[3] "A claim of solatium is a claim for the mental anguish, bereavement and grief that those with a close personal relationship to a decedent experience as **the result of the decedent's death**, as well as the harm caused by the loss of the decedent, society and comfort."  *Belkin v. Islamic Republic of Iran*, 667 F. Supp.2d 8, 22 (D.D.C. 2009).  As Plaintiff William E. Putman, II brought this action on his own behalf, and is not deceased, solatium damages are not available to him.

(6th Cir. 2017) (quoting *S. Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 479 F.2d 478, 480 (6th Cir. 1973)).  "A Rule 12(c) motion 'is granted when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law.'"  *Id.* (quoting *Paskvan v. City of Cleveland Civil Serv. Comm'n*, 946 F.2d 1233, 1235 (6th Cir. 1991)).

### D.  Analysis

#### 1.  County Defendants' Rule 12(c) Motion Should Be Converted Into a Rule 12(b)(6) Motion

Under Rule 12(c), a motion for judgment on the pleadings cannot be filed until the pleadings are "closed."  Although it does not appear that the Sixth Circuit has addressed this issue, several district courts in this circuit have held that pleadings are not closed until each defendant has filed an answer.  *See, e.g.*, *Outdoor One Commc'n, LLC v. Charter Twp. of Canton*, No. 20-10934, 2021 WL 807870, at *1 (E. D. Mich. Mar. 3, 2021) (finding defendant's 12(c) motion premature as defendant had not yet filed an answer to the complaint); *Gillespie v. City of Battle Creek*, 100 F. Supp. 3d 623, 628 (W.D. Mich. 2015); *Kowall v. GMAC Mortg., LLC*, No. 11-15454, 2012 WL 884851, at *1 (E.D. Mich. Mar. 15, 2012); *Horen v. Bd. of Educ. of Toledo City Sch. Dist.*, 594 F. Supp. 2d 833, 840 (N.D. Ohio 2009) ("If a case has multiple defendants, all defendants must file an answer before a Rule 12(c) motion can be filed.").

However, it is not improper for a court to treat a premature, pre-answer Rule 12(c) motion as a motion to dismiss under Rule 12(b)(6) especially since the legal standard applied to a Rule 12(c) motion is the "same standard that applies to a review of a motion to dismiss under Rule 12(b)(6)." *Moderwell*, 997 F.3d at 659; *Marvaso v. Adams*, No. 18-12442, 2019 WL 3003641, at *1 n. 1 (E.D. Mich. July 10, 2019); *Collins v. Muskegon Cnty. Sheriff's Dep't*, No. 1:05-CV-666, 2007 WL 426586, at *5 (W.D. Mich. Feb. 1, 2007); *Horen*, 594 F. Supp. 2d at 840.  The Undersigned recommends that the Court construe County Defendants' Rule 12(c) motion as a Rule12(b)(6) motion.

### 2. County Defendants Were Not Required to File Objections to the January 9, 2024 Report and Recommendation

Plaintiff contends that the Court should not consider the County Defendants' 12(b)(6) motion because they "have waived their right to object to" an earlier "Report and Recommendation's ultimate recommendation that all of Mr. Putman's claims against the County Defendants 'remain.'"  (ECF No. 36, PageID.471–72). This is not so.

The Report and Recommendation Plaintiff references addressed Defendants Correctional Healthcare Companies, LLC, Joseph Natole, M.D., and Jane Doe, L.P.N.'s Rule 12(b)(6) motion for failure to state a claim.  (ECF No. 27).  And contains no substantive discussion as to the Undersigned's findings regarding the County Defendants, but merely states that the claims lodged against them would

8

remain. (*Id.*). And the reason why the claims would remain against them was because at the time of the report, the County Defendants had not yet challenged the sufficiency of Plaintiff's claims as lodged against them. Thus, the Undersigned did not make a finding as to the legal sufficiency of the claims raised against the County Defendants, and in turn the County Defendants were not required to object to the Report and Recommendation on the basis that it incorrectly found that the claims against them should not be dismissed.

### 3. County Defendants' Motion for Judgment on the Pleadings (ECF No. 33)

#### i. Plaintiff's Official Capacity Claims Against Defendants Skrent, Baxter, and Harris

The County Defendants contend that the official capacity claims against Defendants Skrent, Baxter, Harris, Nordstrom and Maurer should be dismissed as Plaintiff has named Tuscola County as a defendant, and "any 'official capacity' claim against the five individual Defendants must be dismissed as a matter of law." (ECF No. 33, PageID.406).

Plaintiff alleges that Defendant Skrent was the duly elected Sheriff for Tuscola County, and Defendants Baxter, Harris, Nordstrom, and Maurer are all employed by Tuscola County. (ECF No. 19, PageID.134–35, ¶¶ 10–14). But only sues Defendants Skrent, Baxter, and Harris in their official capacities. (*Id.* at PageID.134–35, ¶¶ 10–12).

"An individual-capacity claim is distinct from a claim against a defendant in his official capacity. The former claim may attach personal liability to the government official, whereas the latter may attach liability only to the governmental entity." *Essex v. County of Livingston*, 518 F. App'x 351, 354 (6th Cir. 2013) (internal citations omitted) (citing *Kentucky v. Graham*, 473 U.S. 159, 165–67 (1985)). An official-capacity claim is merely another name for a claim against the municipality. *McMillian v. Monroe Cnty., Ala.*, 520 U.S. 781, 785 n. 2 (1997); *see also Mathews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994); *see also Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1046 (6th Cir. 2015). As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. *Brandon v. Holt*, 469 U.S. 464, 471–72 (1985). And such official-capacity claims against municipal officials, where duplicative of claims asserted by the plaintiff against the municipal entity itself, should be dismissed. *Doe v. Claiborne Cnty., Tenn. By & Through Claiborne Cnty. Bd. of Educ.*, 103 F.3d 495, 509 (6th Cir. 1996) ("We will . . . affirm the dismissal of the official capacity claims against [three municipal officials] because a suit against an official of the state is treated as a suit against the municipality."); *Cavanaugh v. McBride*, 33 F. Supp. 3d 840, 848–49 (E.D. Mich. 2014) ("[B]ecause [the plaintiff] has raised claims against Otsego County, the claims

10

against [the county's sheriff and undersheriff] in their official capacities are duplicative and will be dismissed.").

Plaintiff alleges that "Tuscola County, Skrent, CHC, and Natole acted with deliberate indifference and had unconstitutional policies, customs, and practices regarding the treatment of individuals with disabilities and chronic conditions and the provisions of constitutionally adequate medical care, which was the moving and proximate cause of Mr. Putman's needless suffering and injuries." (ECF No. 19, PageID.147–48, ¶ 66). Plaintiff further states "[t]o the extent Tuscola County and Skrent delegated the final authority to determine inmate medical care to CHC or Natole, the **policies or customs of CHC and Natole are those of Tuscola County**. To that end, Tuscola County cannot completely abdicate its responsibility to supervise contractors like CHC or Natole." (*Id.* at PageID.147, ¶ 65) (emphasis added). And that "Defendants Tuscola County, Skrent, CHC, and Natole each authorized, approved, or knowingly acquiesced" in the following practices: (i) failing to have a physician provide "onsite sick call treatment for inmates housed at TCJ" despite the terms of the Agreement for Healthcare Services entered into with CHC; (ii) "not providing in-person physician services"; and (iii) a booking process "performed by jail staff who lacked any formal clinical training or qualifications needed to make a reasonable determination of Mr. Putman's health needs despite his obvious serious medical needs." (*Id.* at PageID.140, 151, 153 ¶¶ 31, 82–83, 90).

11

The Undersigned finds that the official claims lodged against Defendants Skrent, Baxter, and Harris should be dismissed as a claim against each of those defendants are in essence a claim against the government entity of which they are agents—Tuscola County. *See Kentucky*, 473 U.S. 159, 167 n. 14 (1985) ("There is no longer a need to bring official-capacity actions against local government officials, for under *Monell*, local government units can be sued directly for damages and injunctive or declaratory relief."); *Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003); *Smith v. Clare Cnty.*, Case No. 19-12079, 2021 WL 3205005, at *3 (E.D. Mich. July 29, 2021); *Rodgers v. County of Oakland*, No. 15-cv-12832, 2019 WL 3777031, at **3–4 (E.D. Mich. Aug. 12, 2019).

### ii.  Eighth Amendment Violation: Deliberate Indifference (Individual Capacity)

#### a.  Defendants Skrent, Baxter, Harris and Maurer

The County Defendants argue that Plaintiff's amended complaint fails to "plead facts alleging each individual Defendant's specific knowledge of an excessive risk to his health or safety inside the jail . . . [or] describe how each Defendant specially disregarded such an excessive risk." (ECF No. 33, PageID.409–10).   And as such, Plaintiff fails to adequately plead an Eighth Amendment Deliberate Indifference claim against Defendants Skrent, Baxter, Harris, and Maurer.

12

Under the Eighth Amendment, prisoners have a constitutional right to medical care. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). And prison officials may not act with deliberate indifference to the medical needs of their prisoners. *Id.* at 104. A deliberate indifference claim has two components, one objective and the other subjective. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001). Under the objective component[4], the plaintiff must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective component, "the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Id.*

The subjective element of a deliberate indifference claim requires a plaintiff to allege that the defendant "subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Comstock*, 273 F.3d at 703 (citing *Farmer*, 511 U.S. at 834). Indeed, the plaintiff must establish that "prison officials have a sufficiently culpable state of mind in denying medical care." *Jones v. Muskegon Cnty.*, 625 F.3d 935, 941

---

[4] The objective component will not be discussed in this Report as the Court has already found that Plaintiff's allegation that the uninterrupted use of his heart medications is an objectively serious medical need that satisfies the objective component of the deliberate indifference test. (ECF No. 37, PageID.558).

(6th Cir. 2010). A culpable state of mind requires obduracy and wantonness, not mere inadvertence. *Gibson v. Foltz*, 923 F.2d 851, 853 (6th Cir. 1992). A plaintiff need not show that an official acted with the purpose or knowledge of causing harm; perceiving and disregarding a substantial risk will suffice. *Comstock*, 273 F.3d at 703 (quoting *Farmer*, 511 U.S. at 835) (holding that official must know of and disregard an excessive risk to inmate health or safety)). In essence, deliberate indifference can be established by a plaintiff demonstrating that medical care was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miller v. Calhoun Cnty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 843 (6th Cir. 2001)).

To satisfy the subjective component of the deliberate indifference test Plaintiff must allege facts which, if true, would show that Defendants Skrent, Baxter, Harris, and Maurer (i) subjectively perceived facts from which to infer that a substantial risk as to Plaintiff existed, (ii) did in fact draw this inference, and (iii) disregarded the risk. *Comstock*, 273 F.3d at 703. Plaintiff contends that Defendants Skrent, Baxter, Nordstrom[5], and Maurer were "personally warned about Mr. Putman's precarious

---

[5] Plaintiff inexplicably eliminates Defendant Harris from this statement in his brief. (ECF No. 36, PageID.476). Despite this the analysis in this section will apply to Defendant Harris as the paragraphs upon which Plaintiff relies do not identify Defendants individually but instead include allegations raised against all defendants.

condition and his need for prescription medication, either by Mr. Putman himself, his family members, or his physicians." (ECF No. 36, PageID.476 (citing ECF No. 19, PageID.139–41, ¶¶ 28–30, 33–35)). But the paragraphs Plaintiff cites only discuss the conveyance of information from Plaintiff's sons and Plaintiff himself to Defendant Nordstrom. (ECF No. 19, PageID.139–41, ¶¶ 28–30, 33–35). There is no mention of Defendants Skrent, Baxter, Harris, or Maurer. The absence of factual allegations mentioning conveyance of the information from Plaintiff, or any other person, directly to Defendants Skrent, Baxter, Harris and Maurer sets this situation apart from that of Defendant Natole.[6] Here, no such individual factual allegations

---

[6] The Court's March 26, 2024 opinion holds that Plaintiff pleaded sufficient facts to establish subjective prong to state a deliberate indifference claim based on the inclusion of the following allegations against Defendant Natole:

> On the morning of October 5, 2023, Dr. Putman called the office of TCJ's Site Medical Director and sole physician, Defendant Natole. Yet, Natole did not take Dr. Putman's call. Still Dr. Putman left Natole an urgent message about their mutual patient's serious cardiac condition and its management with daily metoprolol. Unsurprisingly, neither Natole nor anyone from his office ever returned Dr. Putman's phone call. (ECF No. 19, PageID.141 ¶ 34).

> By that time, Mr. Putman had gone nearly two days without any of his prescription heart medications. And when Mr. Putman eventually received medication sometime during the night of October 5, 2022, it turned out that Natole and Nurse Doe only dispensed a single dosage of an unknown medication contrary to Dr. Putman's prescription and written instructions. (*Id.* at ¶ 36).

(ECF No. 37, PageID.558).

against Defendants Skrent, Baxter, Harris or Maurer are included in the operative complaint.

Plaintiff relies on *Zakora v. Chrisman* to support his position that the complaint contains allegations sufficient to satisfy the subjective component of the test, but Plaintiff's rationale for his reliance on this case misses the mark.  44 F.4th 452 (6th Cir. 2022).  Plaintiff contends that under *Zakora* he "need not allege the precise moment each defendant learned of his condition or that they understood the intricacies of his cardiovascular ailments, or that the[y] believed harm would result." *Id.* at 477.  And while correct that *Zakora* supports that proposition, this is not the argument the County Defendants raise.  The County Defendants argue that Plaintiff "must show that **each defendant** acted with a mental state 'equivalent to criminal recklessness,'" and "that **each defendant** subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk by failing to take reasonable measures to abate it." (ECF No. 33, PageID.409 (citing *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Santiago v. Ringle*, 734 F.3d 585, 591 (6th Cir. 2013)) (emphasis added))).  County Defendants' argument is that Plaintiff failed to include specific allegations as to each defendant regarding their mental state and the knowledge of Plaintiff's circumstances.

While Plaintiff again includes several factual allegations lodged against the collective Defendants, he also includes a modicum of factual allegations against Defendants Skrent, Baxter, and Maurer to satisfy the low *Twombly* bar and survive the County Defendants' Rule 12(b)(6) motion, but he includes no such allegations against Harris.  Plaintiff alleges that "Dr. Putman confirmed that Defendants knew of Mr. Putman's medical and prescription needs by **personally communicating with each of them** and by providing Nurse Doe with Mr. Putman's prescription in accordance with MCL 800.282." (ECF No. 19, PageID.142, ¶ 38) (emphasis added); (*see also* ECF No. 19, PageID.144, ¶¶ 50–51).  Although, Plaintiff does not identify each defendant by name, and in what manner he communicated with them, he alleges that he personally communicated with each of them and the inclusion of this allegation alone is sufficient at this stage.  *Zakora*, 44 F.4th 452, 472 (finding that the mere occurrence of the prior drug overdose incidents "in the relatively small" unit "presented a sufficiently obvious risk to infer that the MDOC Defendants . . . had knowledge of a substantial risk of harm to the other inmates. . ."); *Hoye v. Nelson*, No. 1:07-CV-110, 2009 WL 81115, at *3 (W.D. Mich. Jan. 8, 2009) (finding that the assertion that "Defendants denied Plaintiff treatment" was "sufficient to satisfy the subjective prong of a claim for deliberate indifference" for purposes of Defendants' motion to dismiss).

Plaintiff goes on to explain that he "**complained to Defendants** that he was having chest pain, difficulty breathing, nausea, vomiting and swelling in his extremities" but "**his complaints went unanswered**," (ECF No. 19, PageID.142) (emphasis added); that he "needlessly suffered in his cell at TCJ while **Defendants ignored his pleas for help**," (*Id.* at PageID.142–43) (emphasis added); and that "**Defendants Skrent, Baxter**, Natole, Nurse Doe, Nordstrom, and **Maurer** knowingly failed to examine, treat, [and] care for Mr. Putman, and delayed and intentionally interfered with his previously prescribed treatment plan." (*Id.* at PageID.144, ¶ 52) (emphasis added).  Thus, as to Defendants Skrent, Baxter, and Maurer, Plaintiff has pleaded facts sufficient to state a deliberate indifference claim.

However, Plaintiff did not identify what actions were taken by Defendant Harris. *Zakora*, 44 F.4th at 472 ("[E]ach official's liability must be based solely on that official's own knowledge and actions . . .") (citing *Garretson v. City of Madison Heights*, 407 F.3d 789, 797 (6th Cir. 2005)); *Reilly v. Vadlamudi*, 680 F.3d 617, 626 (6th Cir. 2012) ("Plaintiff must state plausible constitutional violation against each individual defendant—the collective acts of defendants cannot be ascribed to each individual defendant."); *Courser v. Michigan House of Representatives*, 404 F. Supp. 3d 1125, 1140 (W.D. Mich. 2018) ("'[A] complaint which lumps all defendants together and does not sufficiently allege who did what to whom, fails to

state a claim for relief . . . .") (quoting *Tatone v. SunTrust Mortg., Inc.*, 857 F. Supp. 2d 821, 831 (D. Minn. 2012)).

As to the requisite mental state, Plaintiff alleges that "**Defendants Skrent, Baxter,** Natole, Nurse Doe, Nordstrom, and **Maurer** knowingly failed to examine, treat, [and] care for Mr. Putman, and delayed and intentionally interfered with his previously prescribed treatment plan." (ECF No. 19, PageID.144, ¶ 52).  However, Plaintiff's complaint is silent as to Defendant Harris' mental state.  (*See generally* ECF No. 19).  Thus, the Undersigned finds that Plaintiff has alleged sufficient facts against Defendants Skrent, Baxter, and Maurer to survive County Defendants' Rule 12(b)(6) motion as to the deliberate indifference claim but not as to Defendant Harris.

The Undersigned recommends granting the County Defendants' request to dismiss the Eighth Amendment Deliberate Indifference claim against Defendant Harris.

### b.  Defendant Nordstrom

Plaintiff's complaint as to Defendant Nordstrom falls closer in line to that of Defendant Natole.   Plaintiff alleges the following specific allegations as to Defendant Nordstrom:

> While staff were processing Mr. Putman for intake at TCJ, Mr. Putman's sons, Billy and Dr. Putman, discussed their father's heart conditions and critical prescriptions with Defendant Kyle Nordstrom.   Dr. Putman explained to

19

> Nordstrom that as his father's primary care physician, Mr.
> Putman required uninterrupted administration of his
> cardiac prescription medications, including metoprolol,
> clopiodogrel, and atovastin.
>
> Billy and Dr. Putman asked Nordstrom if they could bring
> their father's prescriptions including his metroprolol to
> TCJ, and Nordstrom confirmed that they could. Soon
> after, Billy and Dr. Putman delivered the metoprolol
> prescription, along with Dr. Putman's written orders to
> Defendants at TCJ.

(ECF No. 19, PageID.140, ¶¶ 28–29).

When the allegations above are paired with the general allegations that
Plaintiff advised Defendants of his chest pains, difficulty breathing, nausea,
vomiting and swelling in his extremities to no avail and that defendants ignored his
pleas for assistance, the Undersigned finds that Plaintiff alleges facts sufficient to
state a deliberate indifference claim against Defendant Nordstrom.

### c. Tuscola County

The County Defendants argue that as to Defendant Tuscola County, Plaintiff
has failed to allege an underlying constitutional violation by any individually named
Tuscola County Defendant. (ECF No. 33, PageID.417–19). Further, Plaintiff fails
to identify a policy, custom or practice in his complaint, or establish causation. (*Id.*
at PageID.418–20). The County Defendants' first argument regarding failure to
allege an underlying constitutional violation fails for the reasons discussed in the

section above.  *Supra* Section D(3)(ii).  Thus, the Undersigned will address the County Defendants' latter argument.

Plaintiff is suing a municipality under § 1983 and must therefore show that his injury was caused by a municipal "policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 694 (1978).  "To prevail on [a] § 1983 *Monell* claim [ ] against [a municipality] . . ., the plaintiffs must show (1) that they suffered a constitutional violation and (2) that a municipal policy or custom directly caused the violation." *Hardrick v. City of Detroit*, 876 F.3d 238, 243 (6th Cir. 2017) (citing *Monell*, 436 U.S. at 690–92).

"To show the existence of a municipal policy or custom leading to the alleged violation, a plaintiff can identify: (1) the municipality's legislative enactment or official policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal violations." *Baynes v. Cleveland*, 799 F.3d 600, 621 (6th Cir. 2015).  "Official [ ] policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011).  An unwritten or informal practice can be a defendant's policymakers "know or should have known," or is otherwise "attributable" to the defendant. *D'Ambrosio v.*

21

*Marino*, 747 F.3d 378, 387 (6th Cir. 2014) (internal quotation marks and citations omitted).

In this case, Plaintiff alleges the following with regard to Tuscola County's practices:

1. "Consistent with TCJ's customs, policies, and procedures, Mr. Putman's booking process at TCJ was performed by jail staff who lacked any formal clinical training or qualifications needed to make a reasonable determination of Mr. Putman's health needs despite his obvious serious medical needs." (ECF No. 19, PageID.140, ¶ 31).

2. "Discovery will reveal that contrary to the Agreement for Healthcare Services between Tuscola county and CHC, for the last several years, neither Natole nor any other physician provided onsite sick call treatment for inmates housed at TCJ." (*Id.* at PageID.151, ¶ 82).

3. "Discovery will further show that Defendants Tuscola County, Skrent, CHC, and Natole each authorized, approved or knowingly acquiesced in this conduct." (*Id.* at PageID.151, ¶ 83).

4. "Discovery will also show that Natole assisted with and approved of [Nurse Doe's] decision to interfere with Mr. Putman's previously prescribed treatment plan and that he ratified TCJ and CHC's policy and custom of not providing in-person physician services." (*Id.* at PageID.153, ¶ 90).

- *Defendant Skrent as Final Policymaker*

Plaintiff argues he has successfully stated a *Monell* claim under the final policymaker theory as he alleges, among other assertions, that Defendant Skrent "was the policy maker for Tuscola County . . . [and] was responsible for operating TCJ and supervising the Tuscola County Deputy Sheriffs." (ECF No. 36, PageID.481 (citing ECF No. 19, PageID.134 ¶ 10)). He goes on to assert that "Skrent's decisions were final and unreviewable and [were] not constrained by the official policies of any superior officials." (*Id.*).

To establish a *Monell* violation based on acts of an agent, a plaintiff bears the burden of demonstrating that the agent who made the decision that allegedly violated his rights is an official with final, unreviewable decision-making authority who deliberately chose an unconstitutional course of action from among various alternatives. *Feliciano v. City of Cleveland*, 988 F.2d 649, 655 (6th Cir. 1993) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1985)). A municipality is liable for an official's unconstitutional action only when the official is the one who has the "final authority to establish municipal policy with respect to the action ordered." *Pembaur*, 475 U.S. at 481. "Mere authority to exercise discretion while performing particular functions does not make a municipal employee a final policy maker unless the official's decision are final and unreviewable and are not constrained by the

23

official policies of superior officials." *Feliciano*, 988 F.2d at 655 (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)).

Plaintiff identifies Defendant Skrent as the policymaker for Tuscola County. (ECF No. 19, PageID.134, ¶ 10).  He also states that as to "operations and policies at TCJ, Skrent's decision were final and unreviewable and [were] not constrained by the official policies of any superior officials."  (*Id.*)  Plaintiff also asserts that Defendant Skrent "acted with deliberate indifference and had unconstitutional policies, customs, and practices regrading the treatment of individuals with disabilities and chronic conditions" which included: (i) TCJ's policy and custom of not providing in-person physician services; and (ii) a booking process "performed by jail staff who lacked any formal clinical training or qualifications needed to make a reasonable determination of Mr. Putman's health needs despite his obvious serious medical needs."  (*Id.* at PageID.140, 147–48, 153 ¶¶ 31, 66, 90).  Plaintiff asserts that theses customs and policies were the "moving and proximate cause of Mr. Putman's needless suffering and injuries."  (*Id.* at PageID.148, ¶ 66).

The question at bar is whether Plaintiff has alleged enough facts to sufficiently plead a "final policymaker" *Monell* claim.  At this juncture, he has. While these allegations might not bear out in discovery, at the pleading stage they are enough. *Jackson v. City of Cleveland*, 622 F. Supp. 3d 636, 643 (N.D. Ohio Aug. 18, 2022).

Thus, the Undersigned finds that Plaintiff has sufficiently alleged a plausible *Monell* claim based on the "final policymaker" theory.

- *Failure to Train and Supervise*

To establish *Monell* liability for failure to train, a plaintiff must prove that: (i) the training or supervision provided was inadequate for the tasks the employee was performing; (ii) the inadequate training resulted from the defendant's deliberate indifference; and (iii) the inadequacy caused the injury. *Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700–01 (6th Cir. 2006) (citing *Russo v. City of Cincinnati*, 953 F.2d 1036, 1046 (6th Cir. 1992)). To establish deliberate indifference, a plaintiff must show "prior instances of unconstitutional conduct demonstrating that the [municipality] has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury." *Marcilis v. Twp. of Redford*, 693 F.3d 589, 605 (6th Cir. 2010) (quoting *Plinton v. Cnty. of Summit*, 540 F.3d 459, 464 (6th Cir. 2008)); *Gambrel v. Knox Cnty.*, 25 F.4th 391, 408 (6th Cir. 2022) (citations omitted). "Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Connick,* 563 U.S. at 62.

Alternatively, a plaintiff may show deliberate indifference through "a single violation of federal rights, accompanied by a showing that a municipality has failed

25

to train its employees to handle recurring situations presenting an obvious potential for such a violation." *Plinton*, 540 F.3d at 464 (quoting *Board of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 409 (1997)). "'Obvious potential for such a violation' has two elements: It must be obvious that the failure to train will lead to certain conduct, and it must be obvious (i.e., clearly established) that the conduct will violate constitutional rights." *Arrington-Bey v. City of Bedford Heights*, 858 F.3d 988, 955 (6th Cir. 2017).

Plaintiff's complaint sufficiently alleges the existence of "a pattern of similar constitutional violations." Plaintiff alleges that "[c]onsistent with TCJ's customs, policies, and procedures, Mr. Putman's booking process at TCJ was performed by jail staff **who lacked any formal clinical training or qualifications** needed to make a reasonable determination of Mr. Putman's health needs despite his obvious serious medical needs." (ECF No. 19, PageID.140, ¶ 31) (emphasis added). Further, the need for additional training and supervision was obvious to Defendants in light of the National Sheriff's Association ("NSA") assessment of the adequacy of TCJ's policies, procedures, and operations from 2018 which "warned of the obvious consequences of Defendants' lack of staffing, training, and supervision of staff and contractors at TCJ." (*Id.* at PageID.148–49, ¶¶ 67–70). These facts sufficiently allege that Defendants received notice of the potential hazard the lack of formal training presented. He also alleges that the report forewarned that individuals with

chronic illnesses, such as Plaintiff, might be "missed without a formal medical assessment." (*Id.* at PageID.148, ¶ 70).

Plaintiff's complaint also successfully pleads a failure to train *Monell* claim under the single incident theory. His allegations regarding the information provided in the NSA assessment shows that in 2018 TCJ was warned that the TCJ staff did not receive "formal clinical training to make determinations on the medical or mental health needs other than common or obvious needs" and this could potentially lead to individuals with chronic illnesses being "missed," which Plaintiff alleges happened here. (*Id.* at PageID.148–49, ¶¶ 69, 71). Thus, the Undersigned finds that these factual allegations are sufficient to plead a failure to train *Monell* claim.

- *Defendant Skrent and Tuscola County's Custom of Tolerating Defendant Natole's Absenteeism*

To state a *Monell* claim based on "an 'inaction theory,' where a policy of tolerating federal rights violations is unwritten but nevertheless entrenched," the plaintiff must show: "(1) the existence of a clear and persistent pattern of illegal activity; (2) notice or constructive notice on the part of the defendant; (3) the defendant's tacit approval of the unconstitutional conduct, such that their deliberate indifference in their failure to act can be said to amount to an official policy of inaction; and, (4) that the defendant's conduct was the 'moving factor' or direct link in the constitutional deprivation." *City of Chattanooga*, 398 F.3d at 429 (citing *Claiborne Cnty., Tenn.*, 103 F.3d 495, 508 (6th Cir. 1996)). Thus, "a custom-of-

tolerance claim requires a showing that there was a pattern of inadequately investigating similar claims." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013).

A court may not find "notice of a patten of misconduct or the pattern itself solely from the mistreatment of the plaintiff." *Nouri v. Cnty. of Oakland*, 615 F. App'x 291, 296 (6th Cir. 2015) (citing *Garretson*, 407 F.3d at 796); *see also Northington v. Abdellatif*, No. 16-12931, 2018 WL 3688665, at *10 (E.D. Mich. Aug. 3, 2018) (requiring "a pervasive pattern of such conduct that affected inmates *other than Plaintiff himself*" to support a deliberate indifference claim under *Monell*) (emphasis added).

The underlying theory in Plaintiff's complaint is that Defendant Skrent and Tuscola County had a custom or practice of permitted Defendant Natole to circumvent the requirements of the Agreement for Healthcare Services by not providing in-person physician services. (ECF No. 19, PageID.153, ¶ 90). The Court found that "Plaintiff has made no allegations in his First Amended Complaint that CHC's custom of not providing in-person services has been consistently implemented to give rise to complaints by others consistent with his own complaint." (ECF No. 37, PageID.566). The same is true as to Defendants Skrent and Tuscola County. Thus, Plaintiff has not stated a custom or tolerance theory of *Monell* liability.

### iii.   ADA and Rehabilitation Act Claims

Plaintiff claims that Defendants Tuscola County and Nordstrom "failure to accommodate Mr. Putman's disability was done in violation of Title II of the ADA and § 504 of the Rehabilitation Act." (ECF No. 19, PageID.158 ¶ 105). He also alleges that Defendants' denial of jail credit for the time he was receiving emergency medical care is evidence that Defendants denied Plaintiff jail services due to his disability. (*Id.* at ¶ 104). Defendants Tuscola County and Nordstrom counter that Plaintiff fails to allege allegations "which would demonstrate that Plaintiff was excluded from participation [in], was denied the benefit of, or was discriminated in, the provision of a Tuscola County service, program or activity **because of** his claimed disability, so as to plead a facially valid ADA claim." (ECF No. 33, PageID.421) (emphasis in original). Further, Plaintiff "has not pled that he was excluded from any activity that receives federal financial assistance at all, which is fatal to his Rehabilitation Act claim." (*Id.*).

Title II of the ADA provides, in pertinent part, that no qualified individual with a disability shall, because of that disability, "be denied of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Mingus v. Butler*, 591 F.3d 474, 481–82 (6th Cir. 2010) (citing 42 U.S.C. § 12132). In order to state a claim under Title II of the ADA, Plaintiff must show: 1) that he is a qualified individual with a disability; 2) that defendants are subject to the ADA; and 3) that he was denied the opportunity to participate in or

benefit from defendants' services, programs, or activities, or was otherwise discriminated against by defendants, by reason of his disability. *See Tucker v. Tennessee*, 539 F.3d 526, 532–33 (6th Cir. 2008). In other words, the plaintiff must show that the defendant took action because of the disability, i.e., the "[p]laintiff must present evidence that animus against the protected group was a significant factor in the position taken by the municipal decision-makers themselves or by those to whom the decision-makers were knowingly responsive." *Anderson v. City of Blue Ash*, 798 F.3d 338, 357 (6th Cir. 2015). The Sixth Circuit has instructed that a "plaintiff must show that the defendants intentionally discriminated against him *because of* his disability." *Madej v. Maiden*, 951 F.3d 364, 372 (6th Cir. 2020) (emphasis in original).

The Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." *Sedore v. Wyckoff*, 2022 WL 141526, at *2 (E.D. Mich. Jan. 14, 2022).

Plaintiff alleges that he was entitled to a medical accommodation to continue his preexisting heart prescription, and Defendants Tuscola County and Nordstrom denied him this right. (ECF No. 19, PageID.158, ¶ 102). However, Plaintiff's claim against Defendant Nordstrom fails as a matter of law. An individual prison official

does not constitute a "public entity" under the ADA.  *Cox v. Jackson*, 579 F. Supp.

2d 831, 850, 852 (E.D. Mich. 2008).  Thus, Plaintiff did not show that Defendant

Nordstrom was subject to the ADA.

More importantly, Plaintiff has failed to show that Defendant Nordstrom

denied him a medical accommodation *because of* his disability.  Plaintiff asserts that

his children advised Defendant Nordstrom of his medical condition, his sons

received permission from Defendant Nordstrom to deliver his medical to TCJ, and

Dr. Putman delivered the medication, metoprolol, along with written orders and

instructions without issue.  (ECF No. 19, PageID.132, 140, ¶¶ 3, 28–30).  Plaintiff's

allegations here suggest that Defendants Tuscola County and Nordstrom failed to

ensure that he would receive his prescribed treatment despite his disability not

because of it.  Thus, the Undersigned finds that Plaintiff failed to allege facts to

satisfy the third element of the test.

Accordingly, the Undersigned finds that Plaintiff has failed to state a claim

against Defendants Tuscola County and Nordstrom for the violation of either the

ADA or the RA.  *Causey v. Ouellette*, No. 1:23-cv-884, 2023 WL 6864822, at *3

(W.D. Mich. Oct. 18, 2023) (dismissing plaintiff's ADA and RA claims for failure

to allege that defendants denied plaintiff treatment because of any disability he

suffered); *Parker by Parker v. City of Highland Park*, 437 F. Supp. 3d 609, 620

(E.D. Mich. Jan. 31, 2020) (finding Plaintiff failed to state an ADA claim as he

"failed to plead *any* facts that could tend to establish that the defendants used inappropriate force against him *because* of his disability or that his disability was a *significant factor* in the officers' decisions to use force); *Moore v. Tanner*, No. 07-CV-100042, 2008 WL 3876346, at *8 (E.D. Mich. Aug. 18, 2008) (finding plaintiff failed to "establish that he was denied any services offered by the [j]ail or that any acts or omissions about which he complains were caused by his alleged disability); *Censke v. Clinton Cnty. Sheriff's Dept.*, No. 5:04-cv-107, 2006 WL 1766392, at *9 (W.D. Mich. June 27, 2006);

### iv.  First Amendment Retaliation Claim

"For a retaliation claims to survive a motion to dismiss, '[a] § 1983 plaintiff must plead factual allegations sufficient to establish that (1) the plaintiff engaged in constitutionally protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the adverse action was motivated at least in part by the plaintiff's protected conduct.'" *Bright v. Gallia Cnty.*, 753 F.3d 639, 653 (6th Cir. 2014) (quoting *Handy-Clay v. City of Memphis*, 695 F.3d 531, 539 (6th Cir. 2012) (quotation omitted) (alteration in original)).

Plaintiff must include factual allegations showing that the County Defendants' mistreatment and failure to provide proper medical care to him was motivated in substantial part by the fact that he engaged in constitutional protected activity.  First,

the County Defendants agree that Plaintiff was engaged in protected conduct when speaking out against the bond proposal.  (ECF No. 33, PageID.423); *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006) (the First Amendment protects an individual speaking in their capacity as  public citizen regarding a public concern).  Defendants instead argue that Plaintiff has failed to "identify a casual link between the purported constitutionally protected conduct and any alleged adverse action . . . ."  (ECF No. 33, PageID.423).   The Undersigned agrees.   Plaintiff does not provide any information as to what, where, and when he and his family publicly opposed the bond proposal, nor does he allege any information as to the context of the statements made during the opposition.  Plaintiff also fails to allege that any of the County Defendants were even aware of his statements. *Hopkins v. Canton City Bd. of Educ.*, 477 F. App'x 349, 361–62 (6th Cir. 2012).

Further, Plaintiff fails to proffer factual allegations to support the contention that County Defendants' "adverse action was motivated at least in part by" his conduct.  *Bright*, 753 F.3d at 653.  He merely alleges that the "substantial or motivating factor[7]" behind Defendants' conduct was the act of "publicly oppos[ing]"

---

[7] I also note that the retaliation claim is somewhat at odds with the other claims raised in Plaintiff's complaint.  Plaintiff alleges that it is County Defendants' custom, policies, and practices of poor training and acquiescing to Defendant Natole practice of not providing in-person physician services that led to his medical emergency and ultimately the alleged violation of his Eighth Amendment right.  Thus, the cause of the alleged failure

a bond proposal sought by Defendant Tuscola County in 2022.  (ECF No. 19, PageID.159, ¶¶ 108–10, 112–14).  But he says nothing more.  This weighs against finding that the complaint contains enough to establish that there was a causal connection between Plaintiff's public opposition to the bond proposal and the medical treatment Plaintiff received during his incarceration at TCJ.

### C.    Conclusion

For the following reasons, **I RECOMMEND** that the Court **GRANT** the County Defendants' motion to dismiss **IN PART** (ECF No. 33).

## III.    <u>REVIEW</u>

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1.) Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981.) The parties are advised that making

---

is either due to a policy but not retaliation or there is a policy and this particular Plaintiff was also subject to a particularized retaliation.

some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d.) The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: June 10, 2024

S/ PATRICIA T. MORRIS
Patricia T. Morris
United States Magistrate Judge