UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

WILLIAM E. PUTMAN II,

        Plaintiff,                         Case No. 1:23-cv-10427

v.                                         Honorable Thomas L. Ludington
                                             United States District Judge

COUNTY OF TUSCOLA, et al.,

                                             Honorable Patricia T. Morris
        Defendants.                    United States Magistrate Judge
_____/

**OPINION AND ORDER (1) SUSTAINING IN PART AND OVERRULING IN PART COUNTY DEFENDANTS' OBJECTIONS; (2) OVERRULING PLAINTIFF'S OBJECTIONS; (3) ADOPTING IN PART MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION; (4) GRANTING IN PART COUNTY DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

Like many jails, the Tuscola County Jail (TCJ) in Tuscola County, Michigan, contracts with Correctional Health Care (CHC) for CHC to provide healthcare services to its inmates. In October 2022, Plaintiff William E. Putman was taken to the TCJ to serve a 30-day sentence. Upon his arrival, Plaintiff informed TCJ staff of his serious heart condition which required uninterrupted use of prescription medication. Plaintiff's son—a doctor—brought Plaintiff's medication to TCJ and conveyed its importance to TCJ staff.

Plaintiff's son told TCJ's Medical Director and Nurse—both employees of CHC—that Plaintiff needed his prescription medication. But Plaintiff never received his medication, and three days after he entered TCJ, he suffered an acute cardiac arrythmia, which obstructed his coronary arteries, resulted in multiple surgeries, and required weeks of treatment and care at a nearby hospital.

In February 2023, Plaintiff sued CHC and two if its employees—Dr. Joseph Natole and Nurse Jane Doe—as well as Tuscola County, Glenn Skrent, Robert Baxter, Brian Harris, Kyle

Nordstrom, and Ryker Maurer,[1] and John Does 1-5,[2] alleging claims of deliberate indifference to his serious medical need in violation the Eighth Amendment, medical malpractice, First Amendment retaliation, and violations of the Americans with Disabilities Act and the Rehabilitation Act.

All County Defendants filed a motion for judgment on the pleadings, and Magistrate Judge Patricia T. Morris issued a report (R&R) recommending that this Court partially grant it. Both Plaintiff and the County Defendants objected to the R&R.

I.

A.

According to Plaintiff William E. Putman II's First Amended Complaint,[3] he is a 62-year-old man with a "history of congestive heart failure." ECF No. 19 at PageID.131–32, 138. In September 2022, a Tuscola County jury found him guilty of four misdemeanor charges of "assault or assault and battery." *Michigan v. Putman*, 22-0129SM-SM (71B Dist. Ct., Tuscola Cnty., Mich.); *see also* ECF No. 19 at PageID.138. Plaintiff's presentence investigation report outlined his congestive heart failure and the "specific treatment and medication" Plaintiff required. *Id.* at PageID.138–39. Moreover, Plaintiff filed a sentencing memorandum in state court that

---

[1] As used in this Opinion and Order, "Individual County Defendants" means Glenn Skrent, Robert Baxter, Brian Harris, Kyle Nordstrom, and Ryker Maurer, who are all employed by Tuscola County. *See* ECF No. 19. "County Defendants" refers to all Individual County Defendants *and* Tuscola County.

[2] Plaintiff alleges that John Does 1–5 "were, at all relevant times, correctional officers or medical staff at TCJ and employees or subcontractors of either the Tuscola County Sheriff's Office or CHC." ECF No. 19 at PageID.137.

[3] At the motion-for-judgment-on-the-pleadings stage, this Court must assume the facts as alleged in Plaintiff's First Amended Complaint, ECF No. 19, are true and evaluate the legal adequacy of those facts. *See Jackson v. Pro. Radiology Inc.*, 864 F.3d 463, 466 (6th Cir. 2017) (noting that the motion may be granted only if the moving party is clearly entitled to judgment based on the facts pleaded in the plaintiff's complaint).

"emphasized his serious heart condition" and attached a letter from his treating specialist who opined that "incarceration would be harmful to [Plaintiff's] health." *Id.*

On October 4, 2022, Plaintiff appeared for his sentencing hearing before Tuscola County District Judge Jason E. Bitzer. *Id.* Plaintiff was sentenced to "12 months of probation with the first 30 days to be served in [Tuscola County Jail]." *Id.* Immediately after the hearing, Tuscola County Sherriff's Department Officers transported Plaintiff to TCJ. *Id.*

During Plaintiff's intake at TCJ, Plaintiff told TCJ staff about his serious heart conditions and necessary prescription medication. *Id.* at PageID.140. Importantly, one of Plaintiff's "critical prescription" medications, *id.* at PageID.139, was metoprolol. Metoprolol's FDA-approved warning label stresses that "abrupt cessation of the drug" is linked to angina[4] and myocardial infarction[5] and that discontinuation of the drug "requires a gradual reduction and careful monitoring[.]" *Id.* at PageID.142. After Plaintiff told TCJ staff about his "critical prescriptions," *id.* at PageID.139, he alleges TCJ staff "transferred [him] to an observation cell without referring him for further medical assessment." *Id.* at PageID.142.

Meanwhile, Plaintiff's two sons—"Billy and Dr. Putman"—"discussed their father's heart conditions and necessary medication with" Defendant Kyle Nordstrom, a TCJ Corrections Officer who was working the day of Plaintiff's intake. *Id.* Dr. Putman explained to Defendant Nordstrom

---

[4] Angina, also referred to as angina pectoris, is a "type of chest pain caused by reduced blood flow to the heart" and is a common symptom of coronary artery disease. Individuals who experience angina describe a "squeezing, pressure, heaviness, [or] tightness" in their chest. *Angina*, MAYO CLINIC (March 22, 2024), https://www.mayoclinic.org/diseases-conditions/angina/symptoms-causes/syc20369373#:~:text=Angina%20(an%2DJIE%2Dnuh,also%20is%20called%20angina%20pectoris. [https://perma.cc/3C9M-PM22].

[5] Myocardial infraction is a technical term for a heart attack, caused by the decreased or complete cessation of blood flow from a portion of the myocardium. *Myocardial Infraction*, NAT'L LIBR. OF MED. (last updated Aug. 8, 2023), https://www.ncbi.nlm.nih.gov/books/NBK537076/#:~:text=Myocardial%20infarction%20(MI)%2C%20colloquially,hemodynamic%20deterioration%20and%20sudden%20death. [https://perma.cc/X7KS-JVYX].

that he was Plaintiff's primary care physician and that Plaintiff "required uninterrupted administration of his cardiac prescription medications, including metoprolol, clopidogrel,[6] and atorvastatin.[7]" *Id.* at PageID.140. Defendant Nordstrom gave Plaintiff's sons permission to bring Plaintiff's prescriptions to TCJ, and sometime later that day, one of Plaintiff's sons delivered "the metoprolol prescription, along with Dr. Putman's written orders," to TCJ. *Id.* But around 11:00 PM that day, Plaintiff "informed his children" that he had not yet received his medications, "despite his repeated requests." *Id.* at PageID.140–41. It is not clear to whom Plaintiff made these "repeated requests." *Id.*

The next morning, Dr. Putman called "TCJ's Site Medical Director and sole physician, Defendant [Dr. Joseph] Natole," but Defendant "Natole did not take Dr. Putman's call." *Id.* at PageID.141. Accordingly, Dr. Putman "left Natole an urgent message about their mutual patient's serious cardiac condition and its management with daily metoprolol." *Id.* But, Plaintiff alleges, no one from Defendant Natole's office returned Dr. Putman's call. *Id.*

Having received no response by 6:00 PM that day, Dr. Putman "drove back to TCJ" and "pleaded with CHC's employee, [Defendant] Nurse Doe," explaining the urgency and importance of Plaintiff being given his medications and that "without uninterrupted use of his prescription metoprolol and other medications, it was obvious that his father risked death." *Id.*

---

[6] Clopidogrel is a blood platelet inhibitor which reduces the chance that a harmful blood clot will block an individual's arteries. *Clopidogrel (Oral Route)*, MAYO CLINIC (last updated March 1, 2024), https://www.mayoclinic.org/drugs-supplements/clopidogrel-oral-route/description/drg-20063146 [https://perma.cc/P3YB-3BVC].

[7] Atorvastatin is a medication used to lower cholesterol and fat levels in the blood to prevent chest pain, heart attacks, and strokes. *Atorvastatin (Oral Route)*, MAYO CLINIC (last updated March 1, 2024), https://www.mayoclinic.org/drugs-supplements/atorvastatin-oral-route/description/drg-20067003#:~:text=Descriptions,fats%20clogging%20the%20blood%20vessels.[https://perma.cc/G9B8-KSN5].

After Dr. Putman's conversation with Defendant Nurse Doe, Plaintiff "eventually received" a single dose of an "unknown medication contrary to Dr. Putman's prescription and written instructions," later that night. *Id.* Afterwards, Plaintiff spoke with his sons through TCJ's videoconference system and told them he had still not received his prescription medications. *Id.* at PageID.142. Plaintiff's sons reported he seemed "disoriented" and "repeatedly stat[ed] that he was thirsty." *Id.*

After the video call with his sons, Plaintiff "complained to Defendants that he was having chest pain, difficulty breathing, nausea, vomiting, and swelling in his extremities." *Id.* Plaintiff alleges "his complaints went unanswered" and "Defendants ignored his pleas for help." *Id.* at PageID.142–43. Again, it is not clear to whom Plaintiff made these complaints. *See id.*

On October 7, 2022, Plaintiff was "rushed by ambulance to McLaren Regional Hospital in Caro, Michigan." *Id.* at PageID.143. After testing and evaluation, doctors recommended that Plaintiff "receive a transesophageal echocardiogram and cardioversion," and that he be transferred to the University of Michigan Hospital in Ann Arbor. *Id.* During the ambulance ride to University of Michigan Hospital, Plaintiff "lost consciousness," and evaluation upon arrival at University of Michigan Hospital "confirmed that [Plaintiff] was experiencing acute coronary syndrome[8] and atrial fibrillation."[9] *Id.* As a result, Plaintiff "underwent multiple surgeries and spent several weeks in the hospital" before serving the remainder of his 30-day sentence at TCJ. *Id.*

---

[8] Acute coronary syndrome is a term that describes the sudden, reduced blood flow to the heart, often causing individuals severe chest pain and discomfort. *Acute Coronary Syndrome*, MAYO CLINIC (May 16, 2023), https://www.mayoclinic.org/diseases-conditions/acute-coronary-syndrome/symptoms-causes/syc-20352136 [https://perma.cc/AA2E-TV8R].

[9] Also known as "AFib," atrial fibrillation describes an irregular and "very rapid" heart rhythm which can lead to blood clots in the heart. *Atrial Fibrillation*, MAYO CLINIC (March 8, 2024) https://www.mayoclinic.org/diseases-conditions/atrial-fibrillation/symptoms-causes/syc-20350624#:~:text=Atrial%20fibrillation%20(AFib)%20is%20an,and%20other%20heart%2Drelated%20complications. [https://perma.cc/7K48-HQKK].

**B.**

In February 2023, Plaintiff filed this suit, ECF No. 1, alleging that all Defendants were deliberately indifferent to his serious medical needs, in violation of the Eighth Amendment, and that CHC and Tuscola County are liable as municipalities under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). ECF No. 19. He also alleges that CHC, Dr. Natole, and Nurse Doe committed medical malpractice under Michigan law; (2) that Tuscola County, Nordstrom, Natole, and Nurse Doe violated the Americans with Disabilities Act and the Rehabilitation Act; and (3) that the County Defendants retaliated against Plaintiff for his public opposition of a bond proposal to fund the construction of a new jail. *Id.*

The case was referred to Magistrate Judge Patricia T. Morris for resolution of all pretrial matters. ECF No. 23. On February 13, 2024, the County Defendants filed a joint motion for judgment on the pleadings, ECF No. 33, which Plaintiff opposed, ECF No. 36. On June 10, 2024, Judge Morris issued an R&R recommending the County Defendants' Motion for Judgment on the Pleadings, ECF No. 33, be granted in part. ECF No. 41. Specifically, Judge Morris recommended that (1) Plaintiff's official-capacity claims against Defendants Skrent, Baxter, and Harris be dismissed; (2) Plaintiff's Eighth Amendment deliberate-indifference claim be dismissed as to Harris; and (3) Plaintiff's ADA, RA, and First Amendment Retaliation claims be dismissed as to all County Defendants. *Id.* at PageID.611.

Both Plaintiff and the County Defendants objected to the R&R. *See* ECF Nos. 42; 43.

**II.**

**A.**

A party may object to and seek review of a magistrate judge's report and recommendation. *See* FED. R. CIV. P. 72(b)(2). If a party objects, then "[t]he district judge must determine de novo

any part of the magistrate judge's disposition that has been properly objected to." FED. R. CIV. P. 72(b)(3). The parties must state any objections with specificity within a reasonable time. *Thomas v. Arn*, 474 U.S. 140, 151 (1985) (citation omitted).

Failure to file specific objections constitutes a waiver of any further right of appeal. *Id.* at 155; *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981). Parties may not "raise at the district court stage new arguments or issues that were not presented" *before* the magistrate judge's final R&R. *See Murr v. United States*, 200 F.3d 895, 902 n.1 (6th Cir. 2000).

When reviewing an R&R *de novo*, this Court must review at least the evidence that was before the magistrate judge. *See Hill v. Duriron Co.*, 656 F.2d 1208, 1215 (6th Cir. 1981). After reviewing the evidence, the court is free to accept, to reject, or to modify the magistrate judge's findings or recommendations. FED. R. CIV. P. 72(b)(3); *Peek v. Comm'r of Soc. Sec.*, No. 1:20-CV-11290, 2021 WL 4145771, at *2 (E.D. Mich. Sept. 13, 2021).

**B.**

Under Civil Rule 12(c) a party may move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." FED. R. CIV. P. 12(c). Such motions are assessed "using the same standard that applies to a review of a motion to dismiss under Rule 12(b)(6)." *Moderwell v. Cuyahoga Cnty.*, 997 F.3d 653, 659 (6th Cir. 2021) (citations omitted).

Under Civil Rule 12(b)(6), a pleading fails to state a claim if it does not contain allegations that support recovery under any recognizable theory. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When considering a Rule 12(b)(6) dismissal, the court must accept all factual allegations of the complaint as true and will construe the pleading in favor of the nonmovant. *See Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008). The plaintiff need not provide "detailed factual

allegations" to survive dismissal, but the "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In essence, the plaintiff's complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," but the court need not accept as true the complaint's legal conclusions. *Iqbal*, 556 U.S. at 678–79 (quotations and citation omitted).

### III.

Altogether, Plaintiff and the County Defendants filed four objections to Judge Morris's R&R, which address three different aspects of the R&R. First, the County Defendants objected to Judge Morris's finding that Plaintiff's deliberate-indifference claims against the Individual County Defendants should proceed. ECF No. 42 at PageID.646–51. Next, both Plaintiff and the County Defendants objected to aspects of Judge Morris's decision relating to Plaintiff's *Monell* claim: Tuscola County contends Judge Morris erred in concluding Plaintiff's *Monell* claim against the County may proceed under final-decisionmaker and failure-to-train theories. *Id.* at PageID.652–56. And Plaintiff contends that Judge Morris erred in concluding that Plaintiff's *Monell* claim should *not proceed* under a custom theory. ECF No. 43 at PageID.659–61. Finally, Plaintiffs object to Judge Morris's conclusion that Plaintiff's ADA claims against Tuscola County should be dismissed. *Id.* at PageID.661–65. Each objection will be addressed in turn.

**A. Deliberate-indifference claims against individual County Defendants**

Plaintiff alleges that all Individual County Defendants—Glenn Skrent, Robert Baxter, Brian Harris, Kyle Nordstrom, and Ryker Maurer—were deliberately indifferent to his serious medical needs, in violation of the Eighth Amendment. ECF No. 19 at PageID.143–47. The Individual County Defendants argued in their Motion that this claim should be dismissed as it

relates to all Individual County Defendants because Plaintiff's Amended Complaint, ECF No. 19, merely made "vague allegations against an amorphous set of 'Defendants', making it impossible for each individual to know what is actually being asserted against him." ECF No. 33 at PageID.410. Judge Morris concluded that Plaintiff's Eight Amendment deliberate-indifference claim should be dismissed against Defendant Harris, because Plaintiff did not make any allegations that Defendant Harris knew of Plaintiff's serious medical need nor that he deliberately disregarded it. ECF No. 41 at PageID.624–28. Accordingly, the R&R recommended that the Eighth Amendment deliberate indifference claim proceed against Defendants Skrent, Baxter, Nordstrom, and Maurer. *Id.* at PageID.628. The County Defendants objected to this conclusion. ECF No. 42 at PageID.646–51.

1.

Under 42 U.S.C. § 1983, a plaintiff may sue any "person" who, under the color of state law, subjects any citizen to the deprivation of any rights, privileges, or immunities secured by the Constitution *See* 42 U.S.C. § 1983. Accordingly, to "prevail on a cause of action under § 1983, a plaintiff must prove (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Winkler v. Madison Cnty.*, 893 F.3d 877, 890 (6th Cir. 2018); *Shadrick v. Hopkins Cnty.*, 805 F.3d 724, 736 (6th Cir. 2015); *see also Jones v. Muskegon Cnty.* 625 F.3d 935, 941 (6th Cir. 2015).

The Eighth Amendment guarantees the right to be free from cruel and unusual punishment. U.S. CONST. amend. VIII. A prisoner asserting a deliberate-indifference claim under the Eight Amendment must show: (1) an objectively serious medical need, and "(2) that the defendant knew 'of and disregard[ed] an excessive risk to [the prisoner's] health or safety.'" *Est. of Abbey v. Herring*, 598 F. Supp. 3d 572, 583–84 (E.D. Mich. 2022) (quoting *Farmer v. Brennan*, 511 U.S.

825, 837 (1994); *Rhinehart v. Scutt*, 894 F.3d 721, 737–38 (6th Cir. 2018)). Under the second, subjective prong, a plaintiff must demonstrate a high standard of culpability, equivalent to criminal recklessness. *Id.*; *Greene v. Crawford Cnty.*, 22 F.4th 593, 605 (6th Cir. 2022); *Griffith v. Franklin Cnty.*, 975 F.3d 554, 568 (6th Cir. 2020). In other words, the plaintiff must show that each defendant "'subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk' by failing to take reasonable measures to abate it." *Rhinehart*, 894 F.3d at 738 (quoting *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001)).

**2.**

Beginning with the first, objective prong, Plaintiff alleges the uninterrupted use of his heart medications was an objectively serious medical need. *See* ECF No. 19 at PageID.138–39 ("Mr. Putman had a history of congestive heart failure and was currently receiving specific treatment and medication."); PageID.140 ("Mr. Putman required uninterrupted administration of his cardiac prescription medications, including metoprolol[.]"); PageID.142 ("[The] FDA-approved warning label for Mr. Putman's metoprolol proscription warns that 'abrupt cessation' of the drug is linked to angina and myocardial infarction[.]"). *See Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008) (noting an objectively serious medical need includes conditions that have been "diagnosed by a physician as mandating treatment" or that are "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." (citing *Blackmore v. Kalamazoo County*, 390 F.3d 890, 897 (6th Cir. 2004))).

But Plaintiff's Amended Complaint does not satisfy the second, subjective prong. *See generally* ECF No. 19. Although Plaintiff adequately alleges that Defendants Skrent, Baxter, Nordstrom, and Maurer were aware of Plaintiff's serious medical needs, Plaintiff merely alleges

that they disregarded Plaintiff's substantial risk of harm "by failing to take measures to reduce it, including intentionally denying, delaying, and interfering with [Plaintiff's] prescription heart medication, and failing to respond to his serious medical needs." *Id.* at PageID.146. But Plaintiff does not allege *how* these Individual County Defendants denied, delayed, or interfered with Plaintiff's medication regimen. *See Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 564 (6th Cir. 2011) ("This Court has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what *each* defendant did to violate the asserted constitutional right." (internal quotation marks omitted) (quoting *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008)). Indeed, there are no specific allegations that Plaintiff even requested his prescription medication from any Individual County Defendant. *See generally* ECF No. 19. Accordingly, the County Defendants' Objection 1 will be sustained, and Plaintiff's Eighth Amendment deliberate indifference claim will be dismissed as it relates to all Individual County Defendants.

### B. Tuscola County's *Monell* Liability

Plaintiff alleges Tuscola County is liable under *Monell* for Plaintiff's constitutional injuries because it failed to "adequately staff" and train its "employees and contractors to appropriately assess and monitor new inmates, particularly those with preexisting serious medical needs." ECF No. 19 at PageID.149. To that end, Plaintiff alleges that Tuscola County "acquiesced" the practice of its contracted medical provider—CHC—not providing onsite sick-call treatment. *Id.* at PageID.151. And Plaintiff alleges that this practice "presented an obvious risk of [] constituationl[ly] deficient medical care." *Id.* at PageID.149.

Tuscola County sought to dismiss Plaintiff's *Monell* claim, arguing that because there was no underlying constitutional violation by any Individual County Defendant, Plaintiff's claim must

be dismissed. ECF No. 33 at PageID.417. Alternatively, Tuscola County argued the claim should be dismissed because Plaintiff's First Amended Complaint only vaguely referred to unconstitutional policies, customs, or practices without identifying a policy in the complaint. *Id.* at PageID.418.

Judge Morris recommended that Plaintiff's *Monell* claim against Tuscola County proceed under two theories: (1) s final-decisionmaker theory; and (2) a failure-to-train theory. ECF No. 41 at PageID.632–36. However, Judge Morris concluded that Plaintiff's custom-of-inaction theory of *Monell* liability against Tuscola County should be dismissed. *Id.* at PageID.636–37.

Plaintiff objected to the dismissal of his custom-of-inaction theory, ECF No. 43 at PageID.659–61, and the County Defendants objected to the recommendation that two of Plaintiff's theories be allowed to proceed, ECF No. 42 at PageID.651–56.

**1.**

In *Monell*, the Supreme Court held that municipalities can be treated as "persons" and subject to § 1983 liability. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). But a municipality cannot be liable for § 1983 deprivations merely because they employ an officer who violates § 1983. *Monell*, 326 U.S. at 691. ("[A] municipality cannot be held liable under § 1983 on a respondent superior theory."). And a municipality cannot be liable if their officers commit no constitutional violation in the first place. *Roell v. Hamilton Cnty.*, 870 F.3d 471, 487 (6th Cir. 2017).

Municipalities are only liable under *Monell* for their "official policies" which *cause* the violation of a person's constitutional rights. *Monell*, 436 U.S. at 692. Generally, there are four "avenues a plaintiff may take to prove the existence of a [defendant's] illegal policy or custom. The plaintiff can look to (1) the [defendant's] legislative enactments or official agency policies;

- 12 -

(2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations." *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986). But, even when a plaintiff can show a sufficient official policy, a plaintiff must also "connect the policy to the municipality, and [] show that [the] particular injury was incurred due to the execution of that policy." *Vereecke v. Huron Valley School Dist.*, 609 F.3d 392, 404 (6th Cir. 2010).

### 2.

#### i.

At the outset, the County Defendants assert that *Monell* liability may not lie against a county without a constitutional violation by that county's employee. *See* ECF Nos. 33 at PageID.417; 42 at PageID.651–52. "Generally, if no constitutional violation can be attributed to an individual municipal actor, it is unlikely that the plaintiff was deprived of a constitutional right at all[,]" thus the municipality may not be liable for a constitutional violation under *Monell*. *Nelms v. Lenawee Cnty.*, No. 21-10917, 2022 WL 263038, at *3 (E.D. Mich. Jan. 26, 2022). "But more recently, the Sixth Circuit has recognized that 'in certain unusual circumstances, a municipality might be liable for a constitutional violation even in the absence of a liable individual.'" *Id.* (quoting *Hart v. Hillsdale Cnty., Michigan*, 973 F.3d 627, 645 (6th Cir. 2020)). Indeed, "[i]n a subset of § 1983 cases, [] the fact that no individual defendant committed a constitutional violation—e.g., acted with deliberate indifference to an inmate's serious medical need—might not necessarily 'require a finding that no constitutional harm has been inflicted upon the victim, nor that the municipality is not responsible for that constitutional harm.'" *North v. Cuyahoga Cnty.*,

754 F. App'x 380, 390 (6th Cir. 2018) (quoting *Epps v. Lauderdale Cnty., Tennessee*, 45 F. App'x 332, 334 (6th Cir. 2002) (Cole, J., concurring)).

At this juncture, taking Plaintiff's Amended Complaint, ECF No. 19, at face value, it appears that Tuscola County *could* be liable under *Monell* for the violation of Plaintiff's Eighth Amendment rights by a CHC employee,[10] as Plaintiff alleges Tuscola County's policy of contracting with CHC for a particularly small number of hours *caused* Plaintiff's injury.

**ii.**

Turning to the merits of Plaintiff's *Monell* claim, it appears all briefing on the County Defendants' Motion for Judgment on the Pleadings, ECF No. 33, *assumed* there was no identified Tuscola County policy at issue. *See* ECF No. 33 at PageID.418 (asserting Plaintiff "vaguely refers to unconstitutional policies . . . without identifying a single such policy in the body of the Complaint." (internal quotations omitted)); *see also* ECF No. 36 at PageID.482–88 (analyzing propriety of municipal liability under the three *Monell* theories which do not require identifying an official policy). Accordingly, the R&R understandably analyzed the propriety of Plaintiff's *Monell* claim against Tuscola County under the three theories the Parties briefed—none of which require the identification of an official policy. But—importantly—Plaintiff's Amended Complaint *does* identify an official policy of Tuscola County: the County's contract with Correctional Health Care which states that CHC will provide 40 hours of nursing care and one hour of physician services each week. *See* ECF No. 19 at PageID.148–49. Accordingly, Plaintiff's *Monell* claim need not resort to alternative theories applicable to *unwritten* municipal policies and practices.

---

[10] Importantly, if, at summary judgment or trial, it is found that Plaintiff's Eighth Amendment rights were *not* violated, Tuscola County would not be liable under *Monell*.

Instead, Plaintiff's *Monell* claim may proceed under the official-policy framework, relying on the County and CHC's official written contract.

Claims based on official policies "must 'identify the policy, connect the policy to the [entity] itself[,] and show that the particular injury was incurred because of the execution of that policy.' " *Graham ex rel. Est. of Graham v. Cnty. Of Washtenaw*, 358 F.3d 377, 383 (6th Cir. 2004) (quoting *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)). "Where the identified policy is itself facially lawful, the plaintiff 'must demonstrate that the municipal action was taken with "deliberate indifference" as to its known or obvious consequences.' " *Gregory v. City of Louisville*, 444 F.3d 725, 752 (6th Cir. 2006) (quoting *Bryan Cnty. Bd. of Comm'rs v. Brown*, 520 U.S. 397, 407 (1997)).

Plaintiff has stated a plausible *Monell* claim against Tuscola County. The contract between Tuscola County and CHC relating to the provision of CHC's services, which included the number of hours CHC employees would work at TCJ is an official policy. ECF No. 19 at PageID.148–49. Further, Plaintiff alleges that his injuries occurred *because of* the small number of hours nurses and physicians were contracted to provide services at TCJ, as he was not assessed by a medical professional upon arrival at TCJ. *Id.* And Plaintiff has demonstrated that Tuscola County was deliberately indifferent to the known and obvious consequences of its staffing policy, as he alleges that the National Sheriff's Association warned Tuscola County about the implications of its staffing policy in 2018. *See id.* at PageID.148–49. To that end, Plaintiff notes that the National Sheriff's Association concluded that, because of Tuscola County's staffing contract, "individuals who have chronic illnesses as identified through symptomatic observation, medical histories, or disclosure might be missed without a formal medical assessment" and that new inmates "might wait up to 72 hours or longer before this assessment is completed." *Id.* Indeed, the report

recommended that Tuscola County "[c]onsider extending contractual coverage" to better assess people during intake. *Id.* at PageID.149.

In sum, all of this taken together demonstrates that Tuscola County had an official policy of providing a limited number of hours of medical care at TCJ that, as alleged, may have caused Plaintiff's injuries here. *See Savoie v. Oliver*, No. 2:23-CV-11357, 2024 WL 1758263, at *3 (E.D. Mich. Apr. 24, 2024) (concluding the plaintiff stated an official-policy claim under *Monell* where plaintiff alleged the contract between jail and medical provider provided for chronic understaffing). Accordingly, Plaintiff's *Monell* claim against Tuscola County may proceed under an official-policy theory.

### iii.

Turning to the remaining three avenues of *Monell* liability that the Parties briefed. The R&R concluded that Plaintiff stated a claim under a failure-to-train and a final-decisionmaker theory, but did not state a claim under a custom-of-inaction theory. ECF No. 41 at PageID.630–37. Judge Morris correctly concluded that Plaintiff pleaded a failure-to-train theory at this stage and has not pleaded a custom-of-inaction theory. But the County Defendants' Objection that Plaintiff's theory of final-decisionmaker will be sustained, and the R&R will be overruled to the extent it suggests Plaintiff's *Monell* claim may proceed under the final-decisionmaker theory.

To succeed on this "final decisionmaker" theory of *Monell* liability, a plaintiff must show that an official "responsible for establishing final policy with respect to the subject in question" made a "deliberate choice to follow a course of action . . . from among various alternatives" and that the final decisionmaker's chosen course of action caused the plaintiff's harm. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986). And Plaintiff's Amended Complaint alleges only that Skrent was the final decisionmaker and his decisions were final and reviewable. *See generally id.*

There is no allegation that Skrent *decided* not to provide in-person physician services, nor any other decision to act or not act as it related to providing medical care generally at TCJ or as to Plaintiff specifically.

**iv.**

In sum, the County Defendants' Objection 2 will be sustained in part and Judge Morris's R&R will be overruled in part to the extent it recommends Plaintiff's *Monell* claim against Tuscola County should proceed under a final-decisionmaker theory. And Plaintiff's Objection 2 will be overruled and Judge Morris's R&R will be adopted to the extent it recommends Plaintiff may not bring a *Monell* claim against Tuscola County under a custom-of-inaction theory. Accordingly, Plaintiff's *Monell* claim against Tuscola County will, at this juncture, be permitted to proceed only under an official-policy theory and a failure-to-train theory

**C. ADA claim against Defendant Nordstrom and Tuscola County**

Plaintiff also asserts that Defendants Tuscola County and Nordstrom "fail[ed] to accommodate [Plaintiff's] disability" in violation of Title II of the Americans with Disabilities Act and § 504 of the Rehabilitation Act. ECF No. 19 at PageID.158.

Judge Morris concluded that Plaintiff did not state a claim against Defendants Nordstrom or Tuscola County for violations of the ADA because he did not allege that either Defendant denied him any service *because of* his disability. ECF No. 41 at PageID.640. Plaintiff objected to Judge Morris's conclusion, arguing that he sufficiently pleaded all the elements of an ADA claim. ECF No. 43 at PageID.662. But he did not.

"Title II of the ADA provides that 'no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.'"

*S.S. v. E. Ky. Univ.*, 532 F.3d 445, 452 (6th Cir. 2008) (quoting 42 U.S.C. § 12132). Section 504 of the Rehabilitation Act establishes that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

Under the ADA, a plaintiff alleging a failure-to-accommodate claim "must show that he is disabled, was otherwise qualified to receive prison services, and was denied access to prison services because of his disability." *Douglas v. Muzzin*, No. 21-2801, 2022 WL 3088240, at *6 (6th Cir. Aug. 3, 2022).

To the extent Plaintiff attempts to assert his "accommodation request" was to receive adequate medical treatment in TCJ, *see* ECF No. 19 at PageID.158 (alleging Defendants "failed to provide a reasonable accommodation" to permit Plaintiff to "continue taking" his metoprolol), this is not an actionable ADA claim. *See Vick v. Core Civic*, 329 F. Supp. 3d 426, 443 (M.D. Tenn. 2018) (collecting cases) (noting that "courts routinely dismiss ADA suits by disabled inmates that allege inadequate medical treatment but do not allege that the inmate was treated differently *because of* his or her disability." (emphasis added)). Indeed, Plaintiff does not allege that Tuscola County did not dispense his medication *because of* his disability. He merely alleges he did not receive his medication. Accordingly, Plaintiff has not plausibly stated that Tuscola County violated the ADA by not dispensing his medication. Accordingly, Plaintiff's Objection 2 will be overruled and Judge Morris's R&R will be adopted to the extent it recommends dismissal of Plaintiff's ADA claim against Defendant Nordstrom and Tuscola County.

**D.**

In sum, the County Defendants' Objections, ECF No. 42, will be sustained in part and overruled in part, and Plaintiff's Objections, ECF No. 43, will be overruled. Judge Morris's R&R, ECF No. 41, will be overruled in part and adopted in part, and the County Defendants' Motion for Judgment on the Pleadings, ECF No. 33, will be denied in part to the extent it seeks to dismiss Plaintiff's *Monell* claim against Tuscola County, which will be permitted to proceed at this juncture under the failure-to-train theory and the official-policy theory. The County Defendants' Motion for Judgment on the Pleadings, ECF No. 33, will be granted in all other respects. Plaintiff's remaining claims against all remaining Defendants are summarized below:

| **Defendant** | **Claim** |
|---|---|
| Joseph Natole, M.D. | • Eighth Amendment Deliberate Indifference (Count I) <br> • Medical Malpractice (Count III) |
| Nurse Doe | • Eighth Amendment Deliberate Indifference (Count I) <br> • Medical Malpractice (Count III) |
| Correctional Health Care | • Eighth Amendment Deliberate Indifference under *Monell* failure-to-train theory (Count II) <br> • Medical Malpractice (Count III) |
| Tuscola County | • Eighth Amendment Deliberate Indifference under *Monell* official-policy theory *and* failure-to-train theory (Count II) |

**IV.**

Accordingly, it is **ORDERED** that the County Defendant's Objections, ECF No. 42, are **SUSTAINED IN PART**, to the extent that Objection 1 will be sustained and Objection 2 will be sustained in part.

Further, it is **ORDERED** that the County Defendants' Objections, ECF No. 42, are **OVERRULED IN PART**, to the extent that Objection 2 will be overruled in part.

Further, it is **ORDERED** that Plaintiff's Objections, ECF No. 43, are **OVERRULED**.

Further, it is **ORDERED** that the Magistrate Judge's Report and Recommendation, ECF No.41, is **OVERRULED IN PART**, to the extent it recommends (1) Plaintiff's Eighth Amendment deliberate indifference claims against Individual County Defendants may proceed and (2) Plaintiff may pursue a *Monell* claim against Tuscola County under a final-decisionmaker theory.

Further, it is **ORDERED** that the Magistrate Judge's Report and Recommendation, ECF No. 41, is **ADOPTED IN PART**, in all other respects.

Further, it is **ORDERED** that the County Defendants' Motion for Judgment on the Pleadings, ECF No. 33, is **DENIED IN PART** to the extent it seeks dismissal of Plaintiff's *Monell* claim against Tuscola County under the official-policy and failure-to-train theories.

Further, it is **ORDERED** that the County Defendants' Motion for Judgment on the Pleadings, ECF No. 33, is **GRANTED IN PART** in all other respects.

**This is not a final order and does not close the above-captioned case.**

Dated: August 5, 2024                                    s/Thomas L. Ludington
                                                         THOMAS L. LUDINGTON
                                                         United States District Judge