UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

WILLIAM E. PUTMAN, II,

        *Plaintiff,*

v.

COUNTY OF TUSCOLA, et al.;

        *Defendants.*

_____/

Case No. 1:23-cv-10427

Thomas L. Ludington
United States District Judge

Patricia T. Morris
United States Magistrate Judge

## ORDER ON DEFENDANTS JOSEPH NATOLE AND JANE DOE'S MOTION TO STAY (ECF No. 60)

### I.    INTRODUCTION

While serving a thirty-day sentence in the Tuscola County Jail, Plaintiff William Putman alleges that officials withheld his prescription medication, causing him to suffer a heart attack. (ECF No. 1, PageID.1, 9, ¶¶ 1, 27). Putman now brings this action under 42 U.S.C. § 1983, alleging medical malpractice and violations of his Eighth Amendment right to be free of cruel and unusual punishment. (ECF No. 48, PageID.719). In addition to Tuscola County, Putman's complaint names the following three Defendants: Correctional Healthcare Companies ("CHC")—a private company that provided healthcare services for the jail—and two of its employees, Doctor Joseph Natole and an unidentified nurse, "Jane Doe." (*Id.*)

After Putman brought this action, CHC filed for Chapter 11 Bankruptcy in the

1

Southern District of Texas.  Because of CHC's bankruptcy filing, all civil claims against it have been automatically stayed under the Bankruptcy Code pending resolution of the company's bankruptcy proceedings.

The upshot here is that the Court can adjudicate Putman's claims against each remaining defendant except for CHC.  Yet rather than allow this case to proceed in a piecemeal fashion, the Court will instead **STAY** the entire case until the automatic bankruptcy stay is lifted.

## II.    BACKGROUND

Last November, CHC filed a voluntary bankruptcy petition under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas.  (*In re Correctional Healthcare Companies, LLC*, No. 24-90546, ECF No. 1 (Bankr. S.D. Tex. Nov. 11, 2024)).  Under 11 U.S.C. § 362(a)(1), the filing of a bankruptcy petition automatically stays any "judicial . . . action or proceeding against the debtor that was or could have been commenced before the" petition was filed.  A day after CHC filed its petition, the Bankruptcy Court entered an order "extending the application of the automatic stay" to all "claims against . . . non-debtor defendants" in cases in which Wellpath "is named as one of the defendants."  (ECF No. 55-2, PageID.831–32).  The Bankruptcy Court reasoned that its authority to "extend" the stay came from § 362.  (*Id.*)

A few days later, counsel for CHC and its employees notified this Court of

the Bankruptcy Court's order.  (ECF No. 55).  Referencing the Bankruptcy Court's order, their notice stated that that the Bankruptcy Court had extended the stay to all other Defendants in this matter under § 362.  (*Id.*)

This Court disagreed.  In response to the CHC Defendants' notice, this Court recognized that under § 362, all actions against CHC were automatically stayed when CHC filed its Chapter 11 petition on November 11.  (ECF No. 58, PageID.886).  But the Court declined to recognize that the Bankruptcy Court's order extended the stay to any other Defendant.  *See In re Wohleber*, 596 B.R. 554, 571 (B.A.P. 6th Cir. 2019) (recognizing that although district courts cannot lift an automatic bankruptcy stay, they hold concurrent jurisdiction with the bankruptcy court to determine its reach).  Section "362(a)(1) does not automatically give rise to a general stay of creditors' rights to pursue nondebtor codefendants, even those with some relationship to the debtor."  *In re Johnson*, 548 B.R. 770, 787 (Bankr. S.D. Ohio. 2016) (citing *Lynch v. Johns–Manville Sales Corp.*, 710 F.2d 1194, 1196 (6th Cir.1983)); s*ee also Am. Imaging Servs., Inc. v. Eagle–Picher Indus., Inc.*, 963 F.2d 855, 861 (6th Cir. 1992).  Although bankruptcy courts may stay proceedings against nondebtors under "unusual circumstances," bankruptcy courts must do so by entering an injunction under § 105(a) of the Bankruptcy Code: claims against nondebtor parties are never "automatically" stayed when a debtor files a bankruptcy petition.  *In re Johnson*, 548 B.R. at 788 (citing *Patton v. Bearden*, 8 F.3d 343, 349

(6th Cir. 1993)).

But here, the Bankruptcy Court did not enter its stay under § 105(a).  (ECF No. 55-2, PageID.831–32).  Indeed, the Bankruptcy Court purported to "extend" the stay under § 362 without ever referring to § 105(a).  (*Id.*)  Because § 362 did not authorize it to " 'extend' the automatic stay to non-debtor defendants," this Court found that the Bankruptcy Court's order did not apply to any Defendant other than CHC.  (ECF No. 58, PageID.888–89).

The CHC Defendants have responded to that order with what is, in essence, a motion for reconsideration.  (ECF No. 60).  The motion is far from a model of clarity.  But read generously, they are arguing that this Court has discretion to extend the automatic stay under § 362 or § 105 of the Bankruptcy Code.  (*See id.* at PageID.900–02).  In the alternative, CHC Defendants argue that the Court has the inherent "power to stay proceeding[s]" to further judicial economy.  (*Id.* at PageID.903).  The individual CHC Defendants move the Court to exercise this discretion, explaining that before CHC's bankruptcy proceedings, they were "promised complete defense and indemnity coverage for any lawsuits arising . . . out of their employment with CHC."  (*Id.* at PageID.888, 901).  But since CHC's Chapter 11 petition, the company has stopped paying for insurance coverage, and it is unclear whether, following the conclusion of the bankruptcy proceedings, the company will be able to pay for their legal defense or indemnify them for any

damages awarded in this action. (*Id.* at PageID.901, 903–04).  Importantly, the CHC

Defendants move the Court to stay the entire case, not just the claims against them.

(ECF No. 60, PageID.906).

Tuscola County concurs with the CHC Defendants' motion insofar as they

request to stay the entire matter rather than just the claims against Natole and Nurse

Doe.  (ECF No. 62, PageID.963).  Putman, on the other hand, opposes the CHC

Defendants' motion and requests that the Court decline to extend the stay to any

other Defendant.  (ECF No. 61).

## III.   **DISCUSSION**

Read generously, the CHC Defendants' motion asserts three distinct bases for

the Court stay this matter: 11 U.S.C. § 105(a), 11 U.S.C. § 362(a), and the Court's

"inherent" powers.  But as discussed in other cases involving CHC's affiliates, the

only legitimate basis for this Court to stay proceedings lies in the Court's inherent

powers.  (*E.g.*, *Bowser v. Watson*, 2:23-cv-10568 (E.D. Mich. Feb. 10, 2025) (first

citing *Clinton v. Jones*, 520 U.S. 681, 706 (1997); and then citing *Landis v. North*

*American Co.*, 299 U.S. 248, 254 (1936))).

Putman argues that the Court should not exercise its inherent authority to stay

this matter for two reasons.  First, the CHC Defendants filed their motion in violation

of this District's local rules.  And second, even if the motion were properly before

this Court, it should decline to exercise its inherent powers because a stay would

5

harm Putman more than it would benefit Defendants.  While Putman's arguments

are well taken, the Court finds that the best course of action is to stay the entire case.

### A.    Local Rules

Putman argues that Defendants' motion violates two local rules.

First, he argues that the moving Defendants violated Local Rule

7.1(d)(1)(A) by "embed[ing] their arguments" within their "motion" rather than

presenting them in a "stand-alone brief."  (ECF No. 61, PageID.937).

A motion is nothing more than "a request for a court to enter an order."  *Doe*

*I v. Exxon Mobil Corp.*, No. 1:01-cv-1357, 2021 WL 1910892, at *4 (D.D.C. May

12, 2021).  Local Rule 7.1(d)(1)(A) requires "each motion" to be "accompanied

by a single brief" that may be "separate from" or "contained within" the motion.

But if the brief is "contained within the motion," then it "must begin on a new

page and be clearly identified as the brief."  E.D. Mich. LR 7.1(d)(1)(A).

Even if the CHC Defendants' filing violated this rule, Local Rule

7.1(d)(1)(A) allows the Court to excuse a party's failure to properly separate a

brief from a motion.  And under these circumstances, the Court will not deny the

CHC Defendants' motion on the grounds that they violated Rule 7.1(d)(1)(A).

Their requested order—that is, their "motion"—is articulated in the last

paragraph of their filing.  (ECF No. 60, PageID.906).  And their briefing, although

perhaps not labeled or separated in the manner envisioned by Local Rule

7.1(d)(1)(A), explains the basis for their motion in reasonable detail. (*Id.* at PageID.898–906). Thus, requiring the CHC Defendants to reformat their filing to comply with the Local Rules would not help to clarify their requested relief or the rationale underlying their motion. The Court, therefore, will excuse any failure to comply with Local Rule 7.1(d)(1)(A).

Putman also argues that the CHC Defendants violated Local Rule 7.1(a)(2)(A) by not making a genuine effort to "resolve [the] disputed issues" regarding the stay before filing their motion. Rule 7.1(a)(2)(A) requires parties to "confer" with all "persons entitled to be heard on the motion" in a "good faith . . . manner that reasonably explains the basis for the motion and allows for an interactive process aimed at reaching agreement on the matter . . . without court intervention."

But Rule 7.1 applies only to motions "relating to discovery." E.D. Mich. LE 7.1(a)(1). And even if the Rule applied here, the Court does not find sanctions—such as "denying" or "striking" the filing—to be appropriate. *See* ED Mich. LR 7.1(a)(3) (providing that the Court "may," but need not, sanction failures to seek concurrence). Before filing the motion, Counsel for the CHC Defendants emailed Putman's and Tuscola County's attorneys to explain the basis for his forthcoming motion and to seek their concurrence. (ECF No. 61-3). To be sure, counsel could have put more effort into seeking concurrence. He did not respond

to Putman's attorney's rationale for opposing concurrence. (*See id.* at PageID.952). And counsel may have had more success discussing the matter in-person or over the phone. But the Court will not decline to reach the merits of the motion because of these minor shortcomings. *See Decorative Panels Int'l, Inc. v. Int'l Ass'n of Machinists & Aerospace Workers Local Lodge W-260*, 996 F. Supp. 2d 559, 568 (E.D. Mich. 2014) (citing *Foman v. Davis*, 371 U.S. 178, 181 (1962)) ("[T]he Federal Rules encourage courts to decide each claim on its merits rather than on procedural technicalities.").

### B. Whether the Court should Exercise its Discretion to Stay Proceedings

Moving past those threshold issues, the Court turns to the merits of the CHC Defendants' motion to stay. When deciding whether to stay proceedings, courts generally consider how a stay would affect (1) judicial economy, (2) the public welfare, and (3) the risk of prejudice to the parties. *See AES-Apex Emp'r Servs., Inc. v. Rotondo*, No. 13-CV-14519-DT, 2015 WL 12990376, at *1 (E.D. Mich. July 24, 2015). And weighing these factors, courts faced with automatic bankruptcy stays that affect only one of several codefendants often elect to stay all claims in the case to avoid inefficient, piecemeal litigation.[1]

---

[1] *E.g.*, *Winthrop Intel. LLC v. Harvard Cider Co.*, LLC, No. 18-cv-02205-CMA-STV, 2019 WL 2544075, at *2 (D. Colo. June 20, 2019); *Rodriguez v. Xtreme Mfg.*, LLC, No. 11cv626, 2012 WL 12819336, at *2 (D.N.M. Mar. 20, 2012); *Wordtech Sys., Inc. v. Integrated Network Sol., Inc.*, No. 04-1971, 2012 WL 6049592, at *2-3 (E.D. Cal. Dec. 5,

So too here.   Adjudicating Putman's remaining claims in a piecemeal fashion would impose a burden on both Defendants and this Court that outweighs any harm that a stay could impose on Putman.  Starting with the Court's interest in judicial economy, entering the Putman's proposed stay would require the Court to undergo duplicitous litigation, proceeding through dispositive motion practice and, potentially, trial on Putman's claims against Tuscola, Natole, Nurse Doe, just to repeat those same, lengthy processes against CHC once the automatic stay is lifted.

Putman correctly notes that the Court has become "well-versed in the legal and factual issues" involved in this case over the last two years.  (ECF No. 61, PageID.938).  But Putman overstates the effort that it will take for the Court to refamiliarize itself with this matter once the bankruptcy stay is lifted.  On balance, staying the entire case to avoid piecemeal litigation is the most efficient path forward, even though the Court recognizes that this decision risks some degree of prejudice to Putman.

Conversely, the inefficiencies inherent in piecemeal litigation would prejudice Defendants.  As the Court previously noted, Putman's claim against Tuscola County centers on its "contract" with CHC.  (ECF No. 48, PageID.714).

---

2012); *J & J Sports Prods, Inc. v. Brar*, 09-3394, 2012 WL 4755037, at *1-2 (E.D. Cal. Oct. 3, 2012); *Beardsley v. All Am. Heating, Inc.*, C05–1962P, 2007 WL 1521225 (W.D. Wash. May 22, 2007).

If the case were to proceed on Putman's claims against Tuscola County, then Tuscola County "and its employees" may still "be necessary witnesses" even after the claims against Tuscola County are resolved.   (ECF No. 62, PageID.964). Tuscola would also be precluded from calling on CHC or its representatives as witnesses until the bankruptcy stay is lifted.  Likewise, Natole and Doe face a similar risk of being called as witnesses in a trial on Putman's claims against Tuscola County and then again in a trial on Putman's claims against CHC.

Declining to enter a stay might prejudice Natole and Nurse Doe in a couple of other ways.  First, proceeding on Putman's individual capacity claims may prevent Natole and Nurse Doe from obtaining discovery that would show CHC shared liability for Putman's Eighth Amendment claims.  Employees in a § 1983 action can "partially" shift liability onto their employers by showing that they acted "pursuant to an official policy."  *Dunton v. Cnty. of Suffolk*, 729 F.2d 903, 907 (2d Cir. 1984).  Accordingly, employee-defendants in many § 1983 cases also have an incentive to mitigate their potential liability by arguing in the alternative that whatever actions they took were in-line with their employer's official policies. *See id.*  But here, CHC would likely possess most of the evidence of its "official polic[ies]" that would be necessary for Natole and Nurse Doe to pursue this strategy.

Second, the uncertainty surrounding Natole and Nurse Doe's

indemnification might hinder their ability to litigate this matter.  Natole and Nurse

Doe are creditors in Wellpath's bankruptcy proceedings.  (*See* ECF No. 60,

PageID.888, 901 (asserting that CHC's employees are "entitled to complete

defense and indemnity from" CHC)).  *See generally In re H & S Transp. Co., Inc.*,

939 F.2d 355, 358–59 (6th Cir. 1991) (holding that entities with contingent—but

not yet realized—rights to indemnity are creditors under the bankruptcy code).

And until CHC's bankruptcy matter is resolved, Natole and Nurse Doe cannot

know whether CHC will provide funds for their legal defense or indemnification.

Yet that information is crucial for them to make informed decisions regarding their

defense.  For instance, the extent to which they will have to satisfy a monetary

judgment at their own expense will likely have a substantial impact on their

willingness to settle Putman's claims.  Likewise, it would be difficult for Natole

and Nurse Doe to prepare for trial without a definite budget.

Declining to enter a stay may also prejudice the CHC Defendants' counsel.

Counsel explains that CHC pays his legal fees.  (ECF No. 60, PageID.901).  And

although not entirely clear from his briefing, there appears to be a risk that the

bankruptcy proceedings may interfere with CHC's ability to pay costs associated

with litigation involving its employees.  Staying proceedings may allow counsel

to ascertain whether and how he will be paid for his services.

In all, adjudicating Putman's claims in a piecemeal fashion would not only

11

hinder the orderly disposition of this case at the time and expense of this Court

and the public who funds it, but it could also severely prejudice the remaining

Defendants.   *See Univ. of Tennessee v. Elliott*, 478 U.S. 788, 798 (1986)

(acknowledging that the public has an "interest in conserving judicial resources").

By contrast, staying this entire matter for the duration of the automatic stay would

likely cause Putman comparatively little harm.  It will also save Putman and his

attorney the expense of litigating this matter twice.  Further, staying this matter

until the Chapter 11 proceedings have concluded would allow Putman to ensure

that Natole and Nurse Doe are insured and therefore not judgment proof.

Therefore, under its inherent authority, the Court will stay the entire action until

the bankruptcy proceedings are terminated or the Bankruptcy Court lifts the stay

as to this matter.

## IV.   <u>CONCLUSION</u>

For these reasons, this case is **STAYED** until the Bankruptcy Court lifts the

automatic stay or CHC's bankruptcy proceedings are resolved, whichever occurs

first.[2]  Further, CHC's counsel is **ORDERED** to notify this Court if the Bankruptcy

Court for the Southern District of Texas extends, lifts, or otherwise modifies its stay

as to any Defendant in this action.

---

[2] *Cathey v. Johns-Manville Sales Corp.*, 711 F.2d 60, 62 (6th Cir. 1983) ("The legislative history of § 362(d) unambiguously identifies the bankruptcy court as the exclusive authority to grant relief from the stay.").

**IT IS SO ORDERED.**

Date: March 17, 2025

S/PATRICIA T. MORRIS
Patricia T. Morris
United States Magistrate Judge