**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**NORTHERN DIVISION**

WILLIAM E. PUTMAN, II,

Plaintiff,

v.

Case No. 1:23-cv-10427
District Judge Michael C. Martin

TUSCOLA COUNTY, et al.,

Defendants.
______________________________/

# OPINION AND ORDER DENYING DEFENDANT TUSCOLA COUNTY'S MOTION FOR RECONSIDERATION (ECF No. 50)

Defendant Tuscola County ("Tuscola") moves for reconsideration of the Court's Opinion and Order (1) Sustaining in Part and Overruling in Part County Defendants' Objections; (2) Overruling Plaintiff's Objections; (3) Adopting in Part Magistrate Judge's Report and Recommendation; and (4) Granting in Part County Defendants' Motion for Judgment on the Pleadings. (ECF No. 48.) Tuscola argues that the Court committed two errors: (1) it allowed Plaintiff's official-policy *Monell* claim to proceed, and (2) it allowed Plaintiff's failure to train *Monell* claim to proceed despite dismissing the individual Tuscola employees from this case. (ECF No. 50, PageID.726.) Plaintiff William E. Putman, II responded to Tuscola's motion. (ECF No. 53.) For the reasons below, the Court denies Tuscola's Motion for Reconsideration. (ECF No. 50.)

## I. BACKGROUND

On October 4, 2022, William E. Putman, II was sentenced to thirty days in the Tuscola County Jail ("TCJ"). (ECF No. 19 at Page 9.) During the first two days at TCJ, Putman alleges he was deprived of a necessary heart medication despite instructions provided to TCJ by Putman's son and physician. (*Id.* at Page 11–13.) Putman's condition deteriorated, and he was transported by ambulance to the hospital, after which he "underwent multiple surgeries and spent several weeks in the hospital." (*Id.* at Page 13.) Putman brought this case against Tuscola County and Tuscola County employees, as well as Correctional Healthcare Companies, LLC ("CHC"), the company contracted by TCJ to provide medical care to inmates, and its employees. (ECF No. 19.) Putman alleges that Defendants are liable under 42 U.S.C. § 1983 (and *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978)), the Americans with Disabilities Act (42 U.S.C. § 12101, *et seq.*), the Rehabilitation Act (29 U.S.C. § 794, *et seq.*), and state medical malpractice law. (ECF No. 19, Page 13–30.)

This case was referred to Magistrate Judge Patricia T. Morris for resolution of all pretrial matters. (ECF No. 23.) County Defendants filed a motion for judgment on the pleadings, and Magistrate Judge Morris issued a report and recommendation ("R&R") that the Court partially grant the motion. (ECF No. 41.) Both Plaintiff and County Defendants objected to the R&R. (ECF No. 42; 43.) On

August 5, 2024, the Court adopted the R&R in part. (ECF No. 48.) Specifically, the Court held that Putman's "Eighth Amendment Deliberate Indifference [claim] under *Monell* official-policy theory *and* failure-to-train theory" may proceed. (ECF No. 48, PageID.719.) As to the official-policy theory, the Court held that Putman identified Tuscola's contract with CHC, which provided the number of nursing and doctor care hours, as the official policy that caused his injury. (ECF No. 48, PageID.714–15.) As to the failure-to-train theory, the Court held that "Judge Morris correctly concluded that Plaintiff pleaded a failure-to-train theory." (*Id.* at PageID.716.) The Court dismissed the claims against the individual County employees. (*Id.* at PageID.711.) Tuscola now moves for reconsideration of the Court's holding permitting claims against Tuscola to proceed under the official-policy and failure-to-train theories. (ECF No. 50.)

## II. STANDARD

Tuscola moved for reconsideration under E.D. Mich. LR 7.1(h)(2). Local Rule 7.1(h)(2) allows the Court to grant a motion for reconsideration on the following grounds: (1) "[t]he court made a mistake, correcting the mistake changes the outcome of the prior decision, and the mistake was based on the record and law before the court at the time of its prior decision," (2) "[a]n intervening change in controlling law warrants a different outcome," or (3) "[n]ew facts warrant a different outcome and the new facts could not have been discovered with

reasonable diligence before the prior decision." Here, Tuscola argues the first ground for reconsideration—i.e., that the Court made a mistake. (ECF No. 50, PageID.729.)

Motions for reconsideration "are disfavored." E.D. Mich. LR 7.1(h)(2). "[P]arties cannot use a motion for reconsideration to raise new legal arguments that could have been raised before a judgment was issued." *Direct Constr. Servs., LLC v. City of Detroit, Michigan*, 820 F. App'x 417, 428–29 (6th Cir. 2020). Similarly, "[a] motion for reconsideration that merely reasserts the same facts and legal arguments previously asserted is not proper unless there was some defect in the first hearing by which the court and the parties have been misled." *Fischer v. United States*, 589 F. Supp. 3d 726, 728 (E.D. Mich. 2022).

## III. ANALYSIS

### A. Official-Policy *Monell* Claim

The Court previously held that Putman's *Monell* claim against Tuscola may "proceed under the official-policy framework, relying on the County and CHC's official written contract." (ECF No. 48, PageID.715.) Tuscola argues this holding was incorrect for two reasons: (1) Putman has failed to plead that his injury was *caused* by the alleged staffing shortages enshrined in the Tuscola/CHC contract, and (2) the Sixth Circuit rejected an official-policy theory in a similar case. (ECF No. 50, PageID.730–38.) Both arguments fail.

First, Tuscola's arguments are procedurally improper. As stated above, a motion for reconsideration "is not an opportunity to re-argue a case." *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998). This is precisely what Tuscola is doing here. In its motion for judgment on the pleadings, Tuscola argued "[t]here simply is no casual [sic] connection between a delay in contractual nursing medical assessments . . . and any harm purportedly sustained by Plaintiff." (ECF No. 33, PageID.419.) Tuscola now renews this argument, asserting that "lack of medical staffing was not *the cause of* Plaintiff's injury." (ECF No. 50, PageID.733.) Tuscola cannot use a motion for reconsideration to rehash old arguments and hope for a different result. Additionally, Tuscola relies heavily on *Graham ex rel. Est. of Graham v. Cnty. of Washtenaw*, 358 F.3d 377 (6th Cir. 2004). The Court already considered this case in its previous Order. (ECF No. 48, PageID.715.) Again, absent any changes to *Graham*'s holding, Tuscola cannot use a motion for reconsideration to rehash old arguments.

Even considering Tuscola's arguments on the merits, Tuscola's motion for reconsideration should still be denied. As to the causation argument, Putman establishes a plausible claim that the staffing deficiencies contained in the CHC/Tuscola contract caused the injury he allegedly suffered. "[T]o satisfy the *Monell* requirements a plaintiff must 'identify the policy, connect the policy to the

city itself and show that the particular injury was incurred because of the execution of that policy.'" *Jackson v. City of Cleveland*, 925 F.3d 793, 829 (6th Cir. 2019) (citing *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)). Here, Putman puts forth a plausible claim that his injuries were caused by the official staffing policy established by CHC/Tuscola contract. Putman alleges that "[c]onsistent with TCJ's customs, policies, and procedures, Mr. Putman's booking process at TCJ was performed by jail staff who lacked any formal clinical training or qualifications." (ECF No. 19, Page 10.) Although Putman alleges that the actual cause of his injury was that TCJ and CHC staff "disregarded . . . Mr. Putman's serious medical needs and their obligation to provide him medical care," it would be incorrect to say that such a claim is completely disconnected from any staffing agreement between CHC and Tuscola, especially before discovery has begun. (ECF No. 19, Page 14.) Had the contract between CHC and Tuscola provided for more staff or better-trained staff, it is plausible that Putman *may have* been given the correct medication at an earlier time and thus avoided injury. Putman's allegations are sufficient to raise a plausible theory of causation at the Rule 12(b)(6) stage.

As to the case law, *Graham* does not control here. 358 F.3d 377. In *Graham*, the estate of a deceased inmate brought suit against Washtenaw County under 42 U.S.C. § 1983 after the inmate died while in police custody. *Id.* at 379. On appeal,

the Sixth Circuit affirmed the district court's grant of summary judgment for the County. *Id.* Graham argued that the County's policy of deferring to the judgment of contracted medical professionals violated his constitutional rights. *Id.* at 384. The Court rejected that argument, holding that the "alleged defects are insufficient to hold the County liable for the alleged constitutional violation in this case." *Id.* Here, unlike in *Graham*, Putman argues that a staffing policy, rather than a policy of deference to medical professionals, was constitutionally insufficient. This is a relevant distinction. *Graham* recognized that the lack of medical training among jail employees would often require jail employees to defer to medical professionals for treatment decisions. *Id.* at 384. In this case, there is no similar rationale for a chronically deficient staffing policy. Although a jail may reasonably defer to medical professionals regarding courses of treatment, a jail may not completely abdicate its responsibility for providing a constitutional minimum of medical care. Additionally, *Graham* held that "[t]here can be no municipal liability where 'an otherwise sound program has occasionally been negligently administered." *Id.* at 385 (quoting *City of Canton v. Harris*, 489 U.S. 378, 391 (1989). But Putman does not allege Tuscola's policy was simply negligently administered in his case. Instead, Putman claims that the overall staffing policy is what led to his injury. For these reasons, Putman's case is distinguishable from *Graham*.

**B. Failure to Train *Monell* Claim**

To establish a *Monell* claim for failure to train, a plaintiff must prove that: (i) the training or supervision provided was inadequate for the tasks the employee was performing; (ii) the inadequate training resulted from the defendant's deliberate indifference; and (iii) the inadequacy caused the injury. *Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006) (citing *Russo v. City of Cincinnati*, 953 F.2d 1036, 1046 (6th Cir. 1992)). A plaintiff may show deliberate indifference through "a single violation of federal rights, accompanied by a showing that a municipality has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation." *Plinton v. Cnty. of Summit*, 540 F.3d 459, 464 (6th Cir. 2008) (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 409 (1997)).

In its motion, Tuscola focuses on the fact that no individual county defendants remain in this case, and Tuscola does not have any "obligation *to medically train CHC's medical staff*." (ECF No. 50, PageID.740.) However, such a conclusion would allow local governments to delegate their constitutional responsibilities to third parties and thereby avoid liability under § 1983. The Supreme Court has rejected this outcome. *See West v. Atkins*, 487 U.S. 42, 56 (1988) ("Contracting out prison medical care does not relieve the State of its constitutional duty to provide adequate medical treatment to those in its custody.").

Therefore, it is still possible that Tuscola could be liable if the policy that Tuscola adopted, by way of its contract with CHC, failed to provide for adequate training of CHC employees. As the R&R explained, Putman has alleged that the jail staff, consistent with TCJ's customs and policies, lacked any formal clinical training or qualifications. (ECF No. 19, PageID.140.) Further, the need for additional training and supervision was apparent considering the National Sheriff's Association assessment that highlighted the "obvious consequences of Defendants' lack of staffing, training, and supervision of staff and contractors at TCJ." (*Id.* at PageID.148–49.) This is sufficient to meet the pleading standard and allege a claim for a failure to train against Tuscola.

Additionally, Tuscola's argument that dismissal of the *Monell* claim based on a failure to train theory is proper because "the Court has dismissed the individually-named County employees from this lawsuit" was already addressed in the Court's Order. (ECF No. 48, PageID.713–14.) As the Sixth Circuit has explained, there may be situations where individual municipal employees have not committed a constitutional violation, but the municipality has. *North v. Cuyahoga Cnty.*, 754 F. App'x 380, 389 (6th Cir. 2018) (quoting *Epps v. Lauderdale Cnty., Tennessee*, 45 F. App'x 332, 334 (6th Cir. 2002) (Cole, J., concurring)). For example, a "given constitutional violation may be attributable to a municipality's acts alone and not to those of its employees." *Id.* Alternatively, it may be "possible

that no one individual government actor may violate a victim's constitutional rights, but that the combined acts or omissions of several employees acting under a governmental policy or custom may violate an individual's constitutional rights." *Id.* Therefore, Putman's claim against Tuscola under the failure to train theory may advance, even though the individual county defendants have been dismissed from this lawsuit.

Finally, Tuscola argues that that the Court erred in its previous opinion by not including any analysis regarding the failure to train claim. (ECF No. 50, PageID.739.) This is incorrect. The Court independently considered and adopted the magistrate judge's R&R on the failure to train theory. (ECF No. 48, PageID.716.) Regardless, Tuscola still does not meet the relevant standard for reconsideration because Putman does state a claim on a failure to train theory. Thus, even if the "[t]he court made a mistake," Tuscola has not shown that "correcting the mistake changes the outcome of the prior decision," and therefore the Rule 7.1 standard is not met.

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** Tuscola's motion for reconsideration. (ECF No. 50.)

s/Michael C. Martin
Hon. Michael C. Martin
United States District Judge

Dated: November 17, 2026